## LASTRA et al. v. NEW YORK & PORTO RICO S. S. CO.

(Circuit Court of Appeals, First 'Circuit. December 13, 1924.)

No. 1571.

**I. Territories** ⬅18—**Admiralty jurisdiction not extended to Porto Rican waters, to exclusion of Workmen's Compensation Act.**

The Constitution has not been so far extended to Porto Rico as to render substantive admiralty law of the United States applicable, and to preclude enforcement of Porto Rican Workmen's Compensation Act in maritime cases, in view of Organic (Jones) Act, particularly sections 7, 8 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3803c, 3803cc); section 41 (section 3803qq), constituting Porto Rico a judicial district and giving it same jurisdiction as District Courts of United States, not having that effect.

**2. Territories** ⬅18—**Local control over local matters presumed.**

Only plainly expressed will of United States is to prevail against the presumption of local control of the Porto Rican government over matters of local concern.

Appeal from the District Court of the United States for the District of Porto Rico; Arthur F. Odlin, Judge.

Suit in equity by the New York & Porto Rico Steamship Company against Cintron Lastra and others. Decree for plaintiff, and defendants appeal. Reversed and remanded, with directions.

Archibald King, Major, Judge Advocate, U. S. Army, of Washington, D. C. (Guerra-Mondragon & Soldevila, of San Juan, Porto Rico, on the brief), for appellants.

Ray Rood Allen, of New York City (Charles Hartzell and Daniel Kelley, both of San Juan, Porto Rico, and Van Vechten Veeder, Everett Masten, and Burlingham, Veeder, Masten & Fearey, all of New York City, on the brief), for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. In the court below Judge Hamilton held that in Porto Rico the doctrine of Southern Pacific v. Jensen, 244 U. S. 205, 37 S. Ct. 524, 61 L. Ed. 1086, L. R. A. 1918C, 451, Ann. Cas. 1917E, 900, must be applied in admiralty, and consequently enjoined the enforcement

of the Porto Rican Workmen's Compensation Act as against the appellee.

No question is made that the Compensation Act (Laws Porto Rico 1918, p. 54) is applicable to the appellee unless Porto Rico, is, as to its substantive admiralty law, subject to the same limitations as one of the states of the United States. Camunas v. N. Y. & P. R. S. S. Co., 260 F. 40, 171 C. C. A. 76.

The single question, therefore, is whether the Constitution has been so far extended to Porto Rico as to bring admiralty jurisdiction there under the substantive admiralty law of the United States, and particularly under the doctrine of the recent decisions of the Supreme Court. Southern Pacific v. Jensen, 244 U. S. 205, 37 S. Ct. 524, 61 L. Ed. 1086, L. R. A. 1918C, 451, Ann. Cas. 1917E, 900; Knickerbocker Ice Co. v. Stewart, 253 U. S. 149, 40 S. Ct. 438, 64 L. Ed. 834, 11 A. L. R. 1145; Washington v. Dawson, 264 U. S. 219, 44 S. Ct. 302, 68 L. Ed. 646.

The case has been ably and elaborately briefed and argued. But the question, as we see it, falls within a narrow compass. It is agreed that Porto Rico has not been so incorporated into the United States that the Constitution there applies, ex proprio vigore. Insular Cases, 182 U. S. 1, 21 S. Ct. 743, 45 L. Ed. 1041; Downes v. Bidwell, 182 U. S. 244, 21 S. Ct. 770, 45 L. Ed. 1088. Also that the admiralty provision of our Constitution does not extend to Porto Rico unless Congress has put it there by legislation. Downes v. Bidwell, 182 U. S. 244, 282, 21 S. Ct. 770, 45 L. Ed. 1088; Porto Rico v. Tapia, 245 U. S. 639, 38 S. Ct. 192, 62 L. Ed. 525, and cases cited. We find no such legislation, but the reverse.

The Porto Rican Legislature has, under the Organic (Jones) Act, 39 Stat. 951 (Comp. St. 1918, Comp. St. 1919, §§ 3803a–3803z), general local legislative powers; which (section 37 [section 3803oo]) "shall extend to all matters of a legislative character not locally inapplicable." Moreover, it is expressly provided in section 1 of the Organic Act (section 3803a) that "the provisions of this act shall apply to the island of Porto Rico and to the adjacent islands belonging to the United States, *and waters of those islands.* * * *" In section 7 (section 3803c) it is provided that property acquired in Porto Rico by the United States from Spain, such as public bridges, water powers, etc., and "all property which at the time of the cession belonged, under the laws of Spain then in force, to the various harbor works boards of Porto Rico, all the harbor

shores, docks, slips, reclaimed lands, and all public lands and buildings not heretofore reserved by the United States for public purposes, *is hereby placed under the control of the government of Porto Rico, to be administered for the benefit of the people of Porto Rico; and the Legislature of Porto Rico shall have authority, subject to the limitations imposed upon all its acts, to legislate with respect to all such matters as it may deem advisable.* * * *"

And in section 8 (section 3803cc) it is provided that: "*The harbor areas and navigable streams and bodies of water and submerged lands underlying the same in and around the island of Porto Rico and the adjacent islands and waters, now owned by the United States and not reserved by the United States for public purposes, be, and the same are hereby, placed under the control of the government of Porto Rico, to be administered in the same manner and subject to the same limitations as the property enumerated in the preceding section.*" (We have italicized the more significant applicable language.)

These two sections—read together and standing unmodified—are enough to give the Porto Rican Legislature general legislative power concerning Porto Rican waters. This is not denied by the appellee's learned counsel. But the contention is that a limitation or modification of this general grant is found in section 41 (section 3803qq) of the Organic Act. Section 41 constitutes Porto Rico a judicial district, provides that the President may appoint a District Judge, with a four-year tenure (not a life tenure, as under the Constitution of the United States, art. 3, § 2), and then gives such District Court jurisdiction in the following language:

"Such District Court shall have jurisdiction of all cases cognizable in the District Courts of the United States, and shall proceed in the same manner."

Shortly stated, the contention is that by these words Congress extended the uniform admiralty law of the United States, with all its limitations and restrictions, to Porto Rico. We are unable to adopt that view.

Undoubtedly this language gives to the District Court of the United States in Porto Rico the admiralty *jurisdiction* given to the District Courts of the United States by Judicial Code, §§ 24(3) and 256(3), being Comp. St. §§ 991(3), 1233. But it does not follow that this language is intended to impose upon Porto Rico the uniform body of admiralty law that, under the Constitution as now construed by the Supreme Court, obtains in

the United States. A grant of jurisdiction and a grant of an enforceable right (an obligatio—The Hamilton, 207 U. S. 398, 405, 28 S. Ct. 133, 52 L. Ed. 264), are two distinct things. Southern Pacific v. Jensen, 244 U. S. 205, 220, 221, 37 S. Ct. 524, 61 L. Ed. 1086, L. R. A. 1918C, 451, Ann. Cas. 1917E, 900.

The fact that in Porto Rico the District Court of the United States may be called upon to enforce substantive rules in admiralty different from those in force in this country, is nothing strange. "Federal laws are constantly applied in state courts." Knickerbocker Ice Co. v. Stewart, 253 U. S. 149, 161, 40 S. Ct. 438, 440 (64 L. Ed. 834, 11 A. L. A. 1145). Compare Second Employers' Liability Cases, 223 U. S. 1, 55, 32 S. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44. So, also, are state laws constantly enforced in federal courts.

If the Constitution is so little in Porto Rico as not to carry there article 1, § 8, requiring uniformity as to "duties, imports and excises throughout the United States" (Downes v. Bidwell, 182 U. S. 284, 21 S. Ct. 770, 45 L. Ed. 1088), or article 3, § 1, providing that "the judicial power of the United States shall be vested" in judges who "shall hold their offices during good behavior" (Organic Act, supra, § 41 [section 3803qq]), there is no tenable ground for holding it there, as did the court below, under an implied public policy as to desirable uniformity of maritime law, arising simply as a matter of interpretation from article 3, § 2, which provides that "the judicial power shall extend * * * to all cases of admiralty and maritime jurisdiction." Compare Downes v. Bidwell, 182 U. S. 244, 266, 21 S. Ct. 770 (45 L. Ed. 1088); American Ins. Co. v. Canter, 1 Pet. 511, 7 L. Ed. 242.

The District Court of Porto Rico is not a constitutional court, whose judicial power extends "to all cases of admiralty and maritime jurisdiction," under article 3, § 2; it is a legislative court, created under the power of the national government to acquire territory and to provide for the government thereof. Compare Benner v. Porter, 9 How. 235, 13 L. Ed. 119; Clinton v. Englebrecht, 13 Wall. 434, 20 L. Ed. 659; McAllister v. United States, 141 U. S. 174, 180, 11 Sup. Ct. 949, 35 L. Ed. 693.

[1] We think that if Congress had intended, by the Organic Act, to extend the admiralty provisions of the Federal Constitution to Porto Rico, language, apt and explicitly expressive of that purpose, would have been used; and that the language of § 41, granting in general terms the same jurisdiction to the District Court of the United States in Porto Rico as have the District Courts of the United States does not import an extension of the substantive rights and obligations of our admiralty law to Porto Rico.

We might, if necessary, as we think it is not, find further support for our conclusions as to the sound interpretation of the applicable provisions of the Organic Act, supra, by reference to the two attempts by Congress to limit, within the United States, the doctrine of the Jensen Case. That case was decided on May 21, 1917. It held the New York Compensation Act inapplicable to maritime laborers. On October 6, 1917, Congress, by 40 Stat. 395, amended Judicial Code, § 24(3), being Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 991(3), by adding to the saving clause as to common-law remedies the following: "And to claimants the rights and remedies under the Workmen's Compensation Law of any state." An analogous amendment was also made to section 256(3) of the Judicial Code (section 1233). This attempt of Congress to permit the application of Compensation Acts to maritime laborers was held unconstitutional in Knickerbocker Ice Co. v. Stewart, supra, in 1920. Thereafter, on June 10, 1922, 42 Stat. 634 (Comp. St. Ann. Supp. 1923, § 991 [3]), a further attempt was made to permit the application of Workmen's Compensation Acts to certain classes of maritime employees, by extending the saving clause with relation to the jurisdiction of the District Court so as to read:

" * * * Saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it, and to claimants for compensation for injuries to or death of persons *other than the master or members of the crew of a vessel* their rights and remedies under the workmen's compensation law of any state, district, territory, or possession of the United States, which rights and remedies when conferred by such law shall be exclusive; of all seizures on land or waters not within admiralty and maritime jurisdiction; of all prizes brought into the United States; and of all proceedings for the condemnation of property taken as prize: Provided, that the jurisdiction of the district courts shall not extend to causes arising out of injuries to or death of persons other than the master or members of the crew, for which compensation is provided by the Workmen's Compensation Law of any state, district, territory, or possession of the United States."

This act also was, in Washington v. Dawson, supra, held unconstitutional by the Supreme Court.

The Organic (Jones) Act was passed in 1917, the same year in which Congress undertook to provide that Compensation Acts should, in the states, apply to such maritime laborers as those whose rights are now in question. It is not reasonable to suppose that the same Congress intended to take away from Porto Rico rights in the admiralty field which it sought to extend to the different states of the United States. Emphasis is lent to this conclusion by the fact that in 1922 it indicated in the most explicit language its purpose to allow such acts full scope, not only in the states of the United States, but in any "district, territory or possession of the United States." We do not regard either the act of 1917 or that of 1922 as a grant of new power to the Porto Rican Legislature; they merely show what otherwise in our view plainly appears, that Congress never intended, by the Organic Act or otherwise, to deprive the Porto Rican Legislature of power to extend Workmen's Compensation Acts to maritime laborers.

[2] Only the plainly expressed will of the United States is to prevail against the presumption of local control over matters of local concern. Compare Diaz v. Gonzalez, 261 U. S. 102, 43 S. Ct. 286, 67 L. Ed. 550; Balzac v. Porto Rico, 258 U. S. 298, 310, 42 S. Ct. 343, 66 L. Ed. 627; Fernandez v. Ayllon, 45 S. Ct. 52, 69 L. Ed. ——, November 17, 1924, No. 82 October Term, 1924.

The result is that the decree below must be reversed, and the bill dismissed with costs.

The decree of the District Court is reversed, and the case is remanded to that court, with directions to dismiss the bill, with costs; the appellants recover costs of appeal.