Ismael COLON NUNEZ, Plaintiff,
Appellant,

v.

HORN–LINIE, Defendant, Third-Party
Plaintiff, Appellee,

v.

FRED IMBERT, INC., et al., Third-Party
Defendants, Appellees.

No. 7275.

United States Court of Appeals,
First Circuit.

Heard Feb. 2, 1970.
Decided March 27, 1970.

Harvey B. Nachman, San Juan, P. R., with whom Nachman, Feldstein, Lafitte & Smith, San Juan, P. R., was on brief, for appellant.

A. Santiago Villalonga, San Juan, P. R., with whom Hartzell, Fernandez, Novas & Ydrach, San Juan, P. R., was on brief, for appellee.

Before ALDRICH, Chief Judge, and McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

This appeal raises a difficult issue concerning the construction of Puerto Rico's Workmen's Accident Compensation Act, 11 L.P.R.A. § 1 et seq. More specifically, we must decide whether a shipowner who hires an independent stevedoring contractor is a "third party" within the meaning of 11 L.P.R.A. § 32, and hence liable to suit by an injured longshoreman, or an "employer" who

"insures his workmen" within the meaning of 11 L.P.R.A. § 21, and therefore immune from civil liability.

The case arises from injuries sustained by plaintiff Ismael Colon Nunez, a Puerto Rican longshoreman, while working aboard a vessel owned by defendant Horn-Linie, a West German corporation. Plaintiff filed suit in federal district court, alleging that his injuries had been caused by defendant's negligence and the unseaworthiness of its vessel. Defendant moved for summary judgment on the grounds that it was plaintiff's "statutory employer" and hence entitled to immunity from suit under the Compensation Act, 11 L.P.R.A. § 21. For purposes of defendant's motion, the parties stipulated that plaintiff had been employed by an independent stevedoring contractor, who had insured plaintiff as required by the Compensation Act; that plaintiff had already received the benefits to which he was entitled under the Compensation Act; and that defendant carried no workmen's compensation insurance. The district court, relying on this court's decision in Musick v. Puerto Rico Telephone Co., 357 F.2d 603 (1st Cir. 1966), and its own extensive opinion in Lopez Correa v. Marine Navigation Co., 289 F.Supp. 993 (D.P.R. 1968), granted defendant's motion.

The decision of the district court highlights a latent conflict among the decisions of this circuit interpreting Puerto Rico's Compensation Act. In a case similar to this, Guerrido v. Alcoa Steamship Co., 234 F.2d 349 (1st Cir. 1956), we permitted a longshoreman's action for unseaworthiness on the grounds that the shipowner was a "third party" within the meaning of 11 L.P.R.A. § 32, a provision which preserves the rights of employees against strangers who contribute to their injuries. We reaffirmed this holding in Waterman Steamship Corp. v. Rodriguez, 290 F.2d 175 (1st Cir. 1961). Subsequently, in Musick v. Puerto Rico Telephone Co., *supra,* a diversity case involving no issue of maritime law, we decided that principal contractors who were potentially liable to the employees of their subcontractors under the Compensation Act, 11 L.P.R.A. § 20, were also entitled to immunity from suit under the statute's exclusive remedy provision, 11 L.P.R.A. § 21. As plaintiff points out, applying *Musick* in a maritime context would effectively overrule *Guerrido.*[1]

Plaintiff seeks to avoid this result by emphasizing that the rights he asserts are based on federal rather than Puerto Rican law, but his attempt founders on the special status of Puerto Rico's coastal waters. Normally, federal law governs maritime torts, Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 79 S.Ct. 409, 3 L.Ed.2d 550 (1959), but Congress has granted Puerto Rico the power to pass inconsistent legislation governing the rights of local workers in local waters. Guerrido v. Alcoa Steamship Co., *supra.* Thus, if Puerto Rico's Compensation Act conflicts with the federal remedies which plaintiff asserts, Puerto Rican law prevails. Fonseca v. Prann, 282 F.2d 153 (1st Cir. 1960); Alcoa Steamship Co. v. Perez Rodriguez, 376 F.2d 35 (1st Cir. 1967).

To avoid this logic, plaintiff challenges the *Musick* doctrine itself. He places special emphasis on the decision of the Supreme Court of Puerto Rico in Gonzalez v. Cerveceria Corona, Inc. (No. R–68–272, Jan. 29, 1969), a decision which, though cryptic, seems inconsist-

---

1. Since the Compensation Act covers accidental death as well as injury, 11 L.P.R.A. § 3 subd. 5, workmen's compensation is the exclusive remedy of the beneficiaries of a deceased worker against his employer. Thus a broad reading of *Musick* would in effect overrule our decision in Compania Transatlantica Espanlo, S.A. v. Melendez Torres, 358 F.2d 209 (1st Cir. 1966), where we applied the doctrine of The Tungus v. Skovgaard, 358 U.S. 588, 79 S.Ct. 503, 3 L.Ed.2d 524 (1958), to permit an action under Puerto Rican law for the wrongful death of a longshoreman caused by the unseaworthiness of a vessel.

ent with *Musick*. Plaintiffs in *Gonzalez* sought recovery from a building owner for the wrongful death of a painter. The deceased had been employed by an independent contractor who had procured the necessary compensation insurance. Relying on our decision in *Musick*, the lower court granted the building owner's motion for summary judgment on the grounds that it was the deceased's "statutory employer" and hence entitled to immunity from suit. Plaintiffs sought review by Puerto Rico's Supreme Court, arguing that the *Musick* doctrine did not reflect the law of Puerto Rico. A division of the court reversed without opinion, remanding for findings on who was in fact the deceased's employer and for trial on the issue of the building owner's negligence. Although the lack of an opinion obscures the rationale of this decision, the court's failure to apply *Musick* in a case where *Musick* seemed clearly applicable provides us with a strong incentive to reexamine our interpretation of Puerto Rican law.

When we decided *Musick* we recognized that the precise question was one of first impression. No decision of the Supreme Court of Puerto Rico then provided guidance. Nor were we aware of the possible relevance of *Guerrido*, perhaps because *Musick* contained no smell of the sea. We therefore addressed ourselves directly to the language of 11 L.P.R.A. § 21, which grants exemption from civil liability "when an employer insures his workmen or employees".[2] We decided that the principal contractor was an "employer" within the meaning of this section because the statute sometimes imposed on him an employer's liability for compensation. He "insured" his subcontractor's employees, we thought, because he bore the additional expense of hiring insured subcontrac-

tors. However, after a careful reconsideration prompted by a recognition of the relevance of *Guerrido* and by the subsequent decision of the Supreme Court in Gonzalez v. Cerveceria Corona, we have decided that our earlier views were not required by the statute.

We first inquire whether the principal contractor is an "employer" within the meaning of the statute. No provision of the Compensation Act defines employer. Nevertheless, inspection of the statute as a whole indicates that the term is usually used in the ordinary sense to denote one who engages the services of workers and supervises their labors. For example, the statute obliges "every employer" to keep a register of his employees, their positions and wages, 11 L.P.R.A. § 29, to make detailed annual statements concerning wages and types of employment to the Manager of the State Insurance Fund, 11 L.P.R.A. § 28, and to report all accidents involving his employees, 11 L.P.R.A. § 14. These duties fall most naturally on the subcontractor who engages a worker for hire rather than on the principal contractor whose dealings with his subcontractor's employees are likely to be few and fleeting.

An exception to this general usage is 11 L.P.R.A. § 20, which provides that:

"Every insured employer shall, on reporting his annual payrolls, include in said payrolls the wages paid to all the workmen and employees working for or employed by him, *whether by job or under some person with whom the employer contracted for the job, or under a contractor or independent subcontractor employed or contracted by said employer;* and all accounts or taxes collected by the State shall be based on the employer's current payroll in which shall be included the above-mentioned laborers; *Provided,*

---

2. 11 L.P.R.A. § 21. *Exclusiveness of Remedy*: "When an employer insures his workmen or employees in accordance with this chapter, the right herein established to obtain compensation shall be the only remedy against the employer, even in those cases where maximum compensations and benefits have been granted in accordance thereof * * *."

*that this provision shall not be applicable to employers for whom work is done by an independent contractor who is insured as an employer under the provisions of this chapter."* (Italics added.)

This provision by its terms seems to treat a principal contractor as the "employer" of all workers engaged in his business, regardless of contractual relations of hire. However, as the Supreme Court of Puerto Rico has pointed out, the liability of the principal contractor is conditional and attaches only when the subcontractor fails to meet his obligations. Montaner, Mgr. v. Industrial Comm., 59 P.R.R. 284, 289 (1941). As long as the subcontractor remains insured, the principal contractor escapes all the manifold duties which the Act imposes on employers. The choice of terminology in section 20 does not, in our opinion, necessarily reflect an intent to make the principal contractor the employer for all purposes, but only a desire to avoid the technical distinctions between employees and independent contractors to which employers sometimes resort in an effort to avoid the burden of social legislation. *See* Montaner, Mgr. v. Industrial Comm., 59 P.R.R. at 290; *cf.* N. L. R. B. v. Hearst Publications, Inc., 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170 (1944); Brodie, The Adequacy of Workmen's Compensation as Social Insurance, 1963 Wisc.L.Rev. 57, 63–65. This rationale does not, we think, compel extending an employer's immunity to a principal contractor who bears none of an employer's statutory burdens.

■ A second exception to the statute's general usage of "employer" may be found in 11 L.P.R.A. § 16, a provision dealing with the penalties to be assessed against uninsured employers. Section 16 provides that injured employees prejudiced by their employer's failure to insure may bring suit for damages, and goes on to provide:

"In such proceedings, the fact that the workman or employee was guilty of contributory negligence; or that he assumed the risk of the injury; or that the injury was caused by the negligence of a contractor or independent subcontractor, *unless such contractor or independent subcontractor is insured in accordance with the provisions of this chapter,* shall not constitute a defense for the employer." (Italics added)

The exception for injuries caused by insured subcontractors, while admittedly ambiguous, seems tacitly to assume that a principal contractor may in some cases be the "employer". In context, however, the effect of this exception is not to exempt totally the principal contractor from civil liability, but only to restore an affirmative defense or defenses which the Act otherwise denies him. This interpretation of the proviso supports plaintiff's argument that the principal should be subject to normal civil liability when his subcontractor is insured. We therefore conclude that, under Puerto Rican law, the principal contractor is not the "employer" of workers hired by an insured independent contractor.

■■ Nor do we now think that the principal contractor "insures" the employees of independent contractors as we held in *Musick.* The Compensation Act uses the term "insures" in a specific sense, meaning to make detailed annual statements, 11 L.P.R.A. § 28, and to pay the premiums which the Manager of the State Fund assesses on the basis of such statements, 11 L.P.R.A. § 26. It is true, as we pointed out in *Musick,* that the principal contractor does "insure" his subcontractor's workers in the sense that he must ultimately bear the burden of his subcontractor's insurance premiums in the form of higher costs. In this respect, however, the burden on the principal contractor is no different than that on any other Puerto Rican businessman or consumer. Puerto Rico's compensation scheme, unlike many others, applies to every worker engaged in the business of his employer. 11 L.P.R.

A. § 2; DeCastro v. Industrial Comm., 72 P.R.R. 622 (1951). The expense of insurance under such a pervasive scheme is simply a cost of doing business to be borne by all who participate in Puerto Rico's economy. Thus we conclude that the principal contractor who does not himself assume the reporting obligations and pay the premiums does not insure his subcontractor's employees within the meaning of the Compensation Act.

This conclusion is, we think, in accord with the policies expressed by Puerto Rico's compensation scheme. Section 32 of the statute, 11 L.P.R.A. § 32, carefully preserves the rights of workmen injured "under circumstances making third parties liable" and permits the Manager of the State Insurance Fund to subrogate himself to the injured workmen's rights.[3] The third persons who pose the greatest threat to a worker's safety are those like the principal contractor who are employed on the same project. We would deprive section 32 of much of its efficacy if we excluded all statutory employers from its scope, especially since Puerto Rico gives broad application to the statutory employer concept.[4] Moreover, provisions like sec-

tion 32 are designed to insure that the burden of loss falls ultimately on the actual wrongdoer rather than the injured worker or his insurer. 2 Larson, Workmen's Compensation Law § 71.10 (1969). In the light of this policy, it would be anomalous if a foreign shipowner could escape the consequences of his wrongdoing and throw the burden of an injured worker's loss back onto the economy of Puerto Rico merely because he employed an insured stevedoring contractor.[5]

This anomaly has sometimes been justified on the grounds that immunity from suit is necessary to induce the principal contractor to hire insured subcontractors. In this view, immunity is required to guarantee that the principal contractor who insists on insurance will be in a better position than his counterpart who deals with uninsured— and therefore cheaper—subcontractors. Bindbeutel v. L. D. Willcutt & Sons Co., 244 Mass. 195, 138 N.E. 239 (1923); 2 Larson, supra at § 72.31, p. 194, both cited in Musick v. Puerto Rico Telephone Co., supra, 357 F.2d at 605. This argument may have merit in the approximately 25 states where compensation insurance is optional, or in those jurisdic-

---

3. 11 L.P.R.A. § 32. Third party; subrogation: "In cases where the injury, the occupational disease, or the death, entitling the workman or employee, or his beneficiaries, to compensation in accordance with this chapter, has been caused under circumstances making third parties liable for such injury, disease or death, the injured workman or employee or his beneficiaries may claim and recover damages from the third party liable for said injury, disease, or death, within one year following the date when becomes final the decision of the case by the Manager of the State Insurance Fund, who may subrogate himself in the rights of the workman or employee or his beneficiaries to institute the same action * * *."

4. Under many state statutes, an employer becomes a "statutory employer" only when he hires outside help to perform work which would otherwise be accomplished by his own employees. If the work in question is normally performed by independent contractors, then the employer has no obligation to insure and no im-

munity from suit, even though the work is intimately related to his own business. Cannon v. Crowley, 318 Mass. 373, 61 N.E.2d 662 (1945); 1A Larson, supra at § 49.12. This interpretation, however, is usually based on restrictive language which Puerto Rico's Act does not contain. Thus a Puerto Rican businessman who enters a contract for services arguably assumes all the obligations of a statutory employer, whether or not the services are normally performed by his own employees. See Montaner, Mgr. v. Industrial Comm., 57 P.R.R. 263 (1940).

5. Of course, the shipowner bears part of the loss because the bill from his stevedoring contractor includes the cost of compensation insurance. Workmen's compensation, however, covers only a relatively small percentage of an injured worker's total loss. See McCoid, The Third Person in the Compensation Picture: A Study of the Liabilities and Rights of Non-Employers, 37 Tex.L.Rev. 389, 401, 402 (1959).

tions where substantial numbers of employers are exempt from coverage. 3 Larson, *supra* at Appendix A, Tables 3, 7. But Puerto Rico's Act, as we have seen, covers virtually all of the island's employers, and its provisions are mandatory. 11 L.P.R.A. § 29.

Puerto Rico has reinforced these mandatory provisions with stiff penalties for those who fail to comply. Failure to insure subjects an employer to fine and imprisonment, 11 L.P.R.A. § 18, to substantial civil penalties for injuries sustained by his employees, 11 L.P.R.A. § 16, and, in some cases, to injunctions against further work until the requisite insurance has been obtained, 11 L.P.R.A. § 2. Furthermore, the sins of the subcontractors may be visited on their principal contractors. If both the subcontractor and the principal contractor fail to insure the subcontractor's employees, then the principal contractor may be treated as an uninsured employer even though he has paid the premiums for his own immediate employees. Puerto Rico American Sugar Refinery, Inc. v. Industrial Comm., 63 P.R.R. 611 (1944); *see* 11 L.P.R.A. § 26. Thus the principal contractor who attempts to cut costs by hiring an uninsured subcontractor must run a gamut of penalties which will ultimately make disobeying the law more costly than obedience. These provisions indicate to us that the legislature intended to insure compliance with the stick of punishment rather than the carrot of immunity from liability. *Cf.* Probst v. Southern Stevedoring Co., 379 F.2d 763, 766 (5th Cir. 1967).

We therefore overrule Musick v. Puerto Rico Telephone Co., supra, and hold that, under Puerto Rican law, a longshoreman employed by an independent, insured stevedoring contractor may sue a shipowner for injuries caused by the shipowner's negligence or the unseaworthiness of his vessel.

Reversed and remanded for proceedings not inconsistent with this opinion.