Jose M. Alonso GARCIA et al.,
Plaintiffs, Appellants,

v.

Adalbert FRIESECKE and British Marine
Mutual Insurance Association, Defend-
ants and Third-Party Plaintiffs, Appel-
lees,

v.

SEA LAND SERVICE, INC., Third-Party
Defendant, Appellee.

Francisco Garcia SERRANO and Jose M.
Alonso Garcia, etc., Plaintiffs,
Appellants,

v.

GULF ATLANTIC TRANSPORT CORP.,
and Continental Insurance Co., Defend-
ants and Third-Party Plaintiffs, Appel-
lees,

v.

ENTERPRISES SHIPPING CO., INC.,
Third-Party Defendant, Appellee.

Gregario Torres MATOS, Plaintiff,
Appellant,

v.

COMPAGNIE GENERALE TRANSAT-
LANTIQUE, Defendant and Third-
Party Plaintiff, Appellee,

v.

FRED IMBERT, INC. and Glenn Falls
Insurance Company, Third-Party
Defendants, Appellees.

Virginia MAYSONET, etc., et al.,
Plaintiffs, Appellants,

v.

AMERICAN EXPORT ISBRANDSTEN
LINES, Defendant and Third-Party
Plaintiff, Appellee,

v.

SAN JUAN MERCANTILE CORP. et al.,
Third-Party Defendants, Appellees.

Rafael E. Claudio TORRES,
Plaintiff, Appellant,

v.

SEA LAND SERVICE, INC.,
Defendant, Appellee.

Jose A. Melendez FLORES,
Plaintiff, Appellant,

v.

COPORACION RAYMOND, S. A., et al.,
Defendants, Appellees.

Nos. 78–1281 to 78–1284, 78–1292
and 78–1297.

United States Court of Appeals,
First Circuit.

Argued Feb. 6, 1979.

Decided April 18, 1979.

Stanley L. Feldstein, Old San Juan, P. R., with whom Feldstein, Gelpi, Hernandez & Castillo, Old San Juan, P. R., was on briefs, for plaintiffs, appellants.

Antonio M. Bird, Jr., San Juan, P. R., and Daniel J. Dougherty, New York City, with whom Bird & Bird, San Juan, P. R., Alberto Santiago Villalonga, Hartzell, Ydrach, Mellado, Santiago & Perez, Hato Rey, P. R., Jose Antonio Fuste, Jimenez & Fuste, San Juan, P. R., and Kirlin, Campbell & Keating, Washington, D. C., were on brief, for defendants and third-party plaintiff, appellees.

Harry Anduze Montano, Hato Rey, P. R., for third-party defendants, appellees.

Carin Ann Clauss, Sol. of Labor, Laurie M. Streeter, Associate Sol., Joshua T. Gillelan, II, and Gilbert T. Renaut, Attys., U. S. Dept. of Labor, Washington, D. C., on brief, for amicus curiae, Director, Office of Workers' Compensation Programs.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

These appeals present the questions whether the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950, applies to Puerto Rico and, if not, whether the Puerto Rico Workmen's Accident Compensation Act, 11 L.P.R.A. § 1 et seq., (hereinafter PRWACA) supersedes plaintiffs' remedies under the general federal maritime law for negligence and unseaworthiness.

Four of the plaintiffs,[1] employees of independent stevedoring contractors retained by defendant shipowners, were injured while performing longshoring work on defendants' vessels which were located upon Puerto Rican navigable waters. Plaintiffs' employers, the independent contractors, were insured in accordance with PRWACA and plaintiffs received benefits thereunder. Plaintiffs then brought suit against defendant shipowners alleging that the negligence of defendants and the unseaworthiness of their vessels were responsible for plaintiffs' injuries. Defendants moved for summary judgment on the ground they were the plaintiffs' statutory employers and immune from suit under § 20 of PRWACA, 11 L.P.R.A. § 21.[2] The district court granted defendants' motions.

We have previously decided that the Longshoremen's Act does not apply to Puerto Rico and that the Puerto Rican legislature may validly enact legislation inconsistent with the general maritime law. Guerrido v. Alcoa Steamship Company, 234 F.2d 349 (1st Cir. 1956); Fonseca v. Prann, 282 F.2d 153 (1st Cir. 1960), cert. denied, 365 U.S. 860, 81 S.Ct. 826, 5 L.Ed.2d 822 (1961)

---

1. Two other plaintiffs are parties to these appeals. Plaintiff Claudio Torres, employed by an independent trucker contractor retained by defendant Sea Land to load, unload, and transfer cargo, was injured ashore on Sea Land's premises. Plaintiff Melendez Flores, an employee of an independent repairman contractor, was injured while repairing defendant's barge. These six cases were chosen by the district court as representative of a group of cases, numbering in excess of 70, pending before the United States District Court for the District of

Puerto Rico, all of which present the same basic issues of law. As the particular factual circumstances of each of the plaintiffs make no difference to the broad issues we decide herein, we need not describe them.

2. 11 L.P.R.A. § 21 provides in material part: "When an employer insures his workmen or employees in accordance with this chapter, the right herein established to obtain compensation shall be the only remedy against the employer . . ."

(PRWACA preempts seamen's actions, brought against their employers and based on general maritime law, for negligence and unseaworthiness); *Alcoa Steamship Company v. Perez Rodriguez*, 376 F.2d 35 (1st Cir.), *cert. denied*, 389 U.S. 905, 88 S.Ct. 215, 19 L.Ed.2d 219 (1967) (PRWACA forecloses in rem suit based on unseaworthiness by longshoreman against his employer's vessel); *Mojica v. Puerto Rico Lighterage Company*, 492 F.2d 904 (1st Cir. 1974) (PRWACA provides exclusive remedy for a worker injured on a tug against his employer, the tug owner). Plaintiffs ask us to reexamine our decision.

The basic principles governing our decisions in Puerto Rican maritime matters were laid down in *Guerrido v. Alcoa Steamship Company*, 234 F.2d 349 (1st Cir. 1956). The fact pattern in that case was much the same as here. Plaintiff was injured while working as a longshoreman aboard a vessel discharging cargo at a port in Puerto Rico. An American citizen residing in Puerto Rico, he was an employee of a stevedoring company which had contracted with defendant shipowner to handle the cargo and which was insured under PRWACA. Plaintiff filed suit in admiralty against the vessel and its owner seeking recovery based on unseaworthiness and negligence. This court held that plaintiff had stated a cause of action under federal maritime law.

We said that "the general rules of maritime law as understood in the United States [had] followed the flag to Puerto Rican waters," *id.* at 354, and were enforceable there with the following qualification: Congress, by the Organic Act of 1917, Pub.L. No.368, c. 145, 39 Stat. 951, had conferred upon the Puerto Rican legislature "general legislative power concerning Puerto Rican waters" which included "full power to provide compensation for marine workers injured in Puerto Rican waters to the exclusion of the remedies against their employers provided by the American maritime law."

*Id.* at 354, 355. Thus, the local legislature could, within a limited sphere,[3] supplant general maritime law by the enactment of legislation inconsistent therewith, although it could not supplant a rule of maritime law which Congress had expressly made applicable to Puerto Rico. We concluded

"that the rules of the admiralty and maritime law of the United States are presently in force in the navigable waters of the United States in and around the Island of Puerto Rico to the extent that they are not locally inapplicable either because they were not designed to apply to Puerto Rican waters or because they have been rendered inapplicable to these waters by inconsistent Puerto Rican legislation."

*Id.* at 355.

We next inquired whether any Puerto Rican statute supplanted or modified general maritime rules providing for recovery based on unseaworthiness or negligence, and we concluded none did. Indeed, plaintiff's action against defendant shipowner was in our view within the purview of § 31 of PRWACA, 11 L.P.R.A. § 32, which permits suits by injured workmen against parties other than their employers alleged to be responsible for the workmen's injuries, and hence condoned by local law. Finally, we determined that Congress had not made the federal Longshoremen's Act applicable to Puerto Rico. *Id.* at 356.

Thus, longshoremen could recover against their employers under PRWACA and against third-party shipowners under negligence and unseaworthiness principles. *Guerrido; Waterman Steamship Corp. v. Rodriguez*, 290 F.2d 175 (1st Cir. 1961); *Colon Nunez v. Horn-Linie*, 423 F.2d 952 (1st Cir. 1970). This state of affairs continued until very recently. However, on March 31, 1977, the Supreme Court of Puerto Rico, in *Lugo Sanchez v. Puerto Rico Water Resources Authority*, Nos. R–76–116, R–76–128 (Puer-

---

**3.** One limitation is set forth in *Alcoa Steamship Company v. Velez*, 376 F.2d 521 (1st Cir. 1967). PRWACA may not be applied to and hence does not foreclose the remedies of a seaman who entered into his contract of employment in the continental United States and was injured on Puerto Rican territorial waters while working as a crew member of a continental United States' vessel temporarily in Puerto Rico.

to Rico 1977), construed § 31 of PRWACA as precluding employee suits in analogous circumstances. If, as the district court has ruled in the instant case, *Lugo Sanchez* must be taken to signal that Puerto Rico's workmen's compensation law forbids negligence and unseaworthiness actions against shipowners, then such actions may no longer be pursued in the Puerto Rico District Court unless either Congress or the Puerto Rico Legislature acts, or unless this court accepts plaintiffs' present invitation to abandon the principles laid down in *Guerrido* regarding the relationship between Puerto Rico and general maritime law, and the non-applicability of the Longshoremen's Act.

The plaintiff in the *Lugo Sanchez* case was an employee of an independent contractor who had contracted with defendant Authority for the construction and maintenance of several thermoelectric plants. Because a valve in defendant's pipeline needed repair, plaintiff's employer notified defendant Authority to remove all steam from the line. When plaintiff began to disassemble the valve, he was injured by an escaping steam jet. Plaintiff's employer was insured in accordance with PRWACA and plaintiff received compensation thereunder. Plaintiff thereafter sued defendant Authority for negligence under § 31 of PRWACA, 11 L.P.R.A. § 32.[4] The Supreme Court of Puerto Rico held that the Authority was not a third party within the meaning of 11 L.P.R.A. § 32 but was the plaintiff's statutory employer and immune from suit under 11 L.P.R.A. §§ 20,[5] 21.[6] The court stated that the purpose of that portion of § 20 which provides " 'this provision [of including in his payrolls the wages paid to all workmen and employees] shall not be applicable to employers for whom work is done by an independent contractor who is insured as an employer under the provisions of this Chapter' " was to grant immunity to the statutory employer, the prime contractor.

In construing PRWACA to exempt a prime contractor, the statutory employer, from liability when his subcontractor has insured the injured employee, the Puerto Rico Supreme Court followed the interpretation accorded by many other, though not all, jurisdictions to workmen compensation provisions similar to § 20 of the Puerto Rican statute. The object of statutory employer, sometimes called "contractor-under," provisions is to provide the general or prime contractor an incentive to require his subcontractors or independent contractors to carry insurance. If the subcontractor were uninsured and the general had insured the sub's employees, the general clearly would be immune from suit. If, instead, the general requires the sub to carry insurance, his reward should not be loss of exemption from third-party suit. 2A Larson, *Workmen's Compensation*, § 72.31, at 14–55 (1976).

In *Lugo Sanchez*, the Puerto Rico Supreme Court followed our reasoning in *Musick v. Puerto Rico Telephone Company*, 357 F.2d 603 (1st Cir. 1966), from which we

---

4. 11 L.P.R.A. § 32 provides in material part: "In case where the injury . . . entitling the workman or employee . . . to compensation in accordance with this chapter has been caused under circumstances making a third party responsible for such injury . . the injured workman or employee . . . may claim and recover damages from the third party responsible for said injury . . ."

5. Section 20 provides: "Every insured employer shall, on reporting his annual payrolls, include in said payrolls the wages paid to all the workmen and employees working for or employed by him,

whether by the job or under some person with whom the employer contracted for the job, or under a contractor or independent subcontractor employed or contracted by said employer; and all accounts or taxes collected by the State shall be based on the employer's current payroll in which shall be included the above-mentioned laborers; Provided, That this provision shall not be applicable to employers for whom work is done by an independent contractor who is insured as an employer under the provisions of this chapter."

6. Section 21 is set out at note 2.

subsequently departed in *Colon Nunez v. Horn-Linie*, 423 F.2d 952,[7] that a prime contractor who requires his independent contractors to take out workmen's compensation insurance has "insured" the workmen of the independent contractor and is therefore immune from suit under the exclusive remedy provisions, 11 L.P.R.A. § 21.

We must defer to the Puerto Rico Supreme Court's interpretation of PRWACA. *See Fornaris v. Ridge Tool Company*, 400 U.S. 41, 91 S.Ct. 156, 27 L.Ed.2d 174 (1970); *Bonet v. Texas Company*, 308 U.S. 463, 470–71, 60 S.Ct. 349, 84 L.Ed. 401 (1940); *Bonet v. Yabucoa Sugar Company*, 306 U.S. 505, 510, 59 S.Ct. 626, 83 L.Ed. 946 (1939); *Alcoa Steamship Company v. Perez Rodriguez*, 376 F.2d at 39. Hence, if apart from their erroneous construction of PRWACA, *Guerrido* and its progeny otherwise state the controlling principles, plaintiffs' sole remedy against defendants is compensation benefits under PRWACA. Plaintiffs dispute this. They argue, first, that the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950, which preserves a remedy in negligence (although not unseaworthiness) against shipowners, 33 U.S.C. §§ 905(b), 933, applies to Puerto Rico; second, that if the Longshoremen's Act does not extend to Puerto Rico, plaintiffs may still recover for negligence and unseaworthiness because Puerto Rico was never empowered to supersede maritime law; and third, that even if PRWACA is controlling, plaintiffs come within exceptions to the statutory employer doctrine, hence *Lugo Sanchez* is not applicable and plaintiffs may pursue their suits under 11 L.P.R.A. § 32.

Our conclusions both that the Longshoremen's Act did not apply to Puerto Rico and

that the Puerto Rican legislature was empowered under the Organic Act of 1917 to enact a compensation statute and thereby supersede remedies available under general maritime law, were set against the background of the Supreme Court's decision in *Southern Pacific Company v. Jensen*, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917), and Congress' response thereto. As a result of *Jensen*, states were precluded from applying their workmen's compensation acts to longshoremen injured in the course of their employment on the state's navigable waters. Congress twice sought to authorize the application of the state acts to said injuries, first in 1917, Pub.L.No.82, c. 97, 40 Stat. 395, the same year the Organic Act was enacted, and then again in 1922, Pub.L. No.239, c. 216, 42 Stat. 634. The latter would have rendered state workmen's compensation the exclusive remedy for the class of maritime workers of which plaintiffs are members, persons other than the master or members of the crew of a vessel. These statutes were declared unconstitutional in *Knickerbocker Ice Company v. Stewart*, 253 U.S. 149, 40 S.Ct. 438, 64 L.Ed. 834 (1920), and *Washington v. W. C. Dawson & Company*, 264 U.S. 219, 44 S.Ct. 302, 68 L.Ed. 646 (1924).

In both *Guerrido* and *Lastra v. New York & Porto Rico S.S. Company*, 2 F.2d 812 (1st Cir. 1924),[8] we indicated that the fact Congress was thwarted in its attempt to authorize the states to apply their compensation acts to injuries occurring on state territorial waters did not indicate Congress intended to withhold from Puerto Rico the power it had sought to confer on the states. The 1917 and 1922 acts reinforced our view "that Congress never intended, by the Organic Act or otherwise, to deprive the

---

7. In *Colon Nunez* we specifically addressed the applicability of 11 L.P.R.A. §§ 21, 32 to a suit by a longshoreman employed by an insured, independent stevedoring contractor against the shipowner. Based on our understanding of Puerto Rican law we concluded that a prime contractor (the shipowner) was not considered the employer of workers hired by an independent contractor (the stevedore) and hence was

a third party within the meaning of § 32 and therefore not immune from suit under § 21. *Lugo Sanchez* terms *Colon Nunez v. Horn-Linie* a wrong precedent and indicates our interpretation of PRWACA was incorrect.

8. *Lastra* was overruled in *Guerrido* to the extent *Lastra* had held that the general maritime law did not extend to Puerto Rico but was otherwise adhered to.

Porto [9] Rican Legislature of power to extend Workmen's Compensation Acts to maritime laborers." *Lastra*, 2 F.2d at 815. Nor, as we recognized in *Guerrido* and in *Fonseca v. Prann*, 282 F.2d at 155–56, do the constitutional limitations imposed by the *Jensen* line of cases on Congress' power to delegate legislative power to the states in this maritime area prevent Congress, acting under the broad power to legislate for national territories, U.S.Const. art. IV, § 3, cl. 2, from conferring on the government of Puerto Rico power to make its workmen's compensation law applicable to injuries sustained by employees while at work on its territorial waters. With this background in mind we reexamine our former decisions.

Our conclusion that the Puerto Rican legislature has the authority to enact a compensation statute displacing remedies available under the general maritime law was based upon §§ 7, 8, and 37 of the Organic Act of Puerto Rico, 39 Stat. 951. These sections, in material part, were re-enacted in the Puerto Rican Federal Relations Act, Pub.L.No.600, c. 446, § 4, 64 Stat. 319 (1950), and are now codified as 48 U.S.C. §§ 747, 749, and 821.

Section 8 placed

"the harbor areas and navigable streams and bodies of water and submerged lands underlying the same in and around the island of Porto Rico and the adjacent islands and waters [owned by the United States on March 2, 1917] and not reserved by the United States for public purposes . . . under the control of the government of Porto Rico, to be administered in the same manner and subject to the same limitations as the property enumerated in [§ 7]."

Section 7 provided that the property placed under the control of the government of Puerto Rico was "to be administered for the benefit of the people of Porto Rico" and that "the Legislature of Porto Rico shall have authority, subject to the limitations imposed upon all its acts, to legislate with respect to all such matters as it may deem advisable." Section 37 extended the local legislative authority "to all matters of a legislative character not locally inapplicable." We concluded "that these three sections gave the Puerto Rican Legislature general legislative power concerning Puerto Rican waters," *Guerrido*, 234 F.2d at 354; *Lastra*, 2 F.2d at 813, including the power to supersede inconsistent rules of federal maritime law. *Guerrido* at 355; *see also Fonseca v. Prann*, 282 F.2d 153 (1st Cir. 1960).

Plaintiffs argue we construed too broadly the degree of control conferred upon the Puerto Rican legislature by the Organic Act of 1917. We disagree.

■ The aim of the Organic Act was to give Puerto Rico full power of local self-determination. *Puerto Rico v. The Shell Company*, 302 U.S. 253, 261–62, 58 S.Ct. 167, 82 L.Ed. 235 (1937). In keeping with the theory upon which the various territories, including Puerto Rico, have been organized, " 'that of leaving to the inhabitants all the powers of self-government consistent with the supremacy and supervision of National authority, and with certain fundamental principles established by Congress,' " *id.* at 260, 58 S.Ct. at 170–171, *quoting Clinton v. Englebrecht*, 13 Wall, (80 U.S.) 434, 441, 20 L.Ed. 659 (1871), the grant of legislative power in respect of local matters contained in § 37 of the Organic Act of 1917 is considered to be "as broad and comprehensive as language [can] make it." *Id.*, 302 U.S. at 261, 58 S.Ct. at 171. The trend towards autonomy in local matters was furthered by the passage of Pub.L.No.600, 64 Stat. 319 (1950), which authorized the people of Puerto Rico to "organize a government pursuant to a Constitution of their own adoption" and by the establishment of Commonwealth status.

In conformity with this general approach to the interpretation of legislation for the territories, and regarding the activities of longshoremen engaged in loading and unloading vessels as essentially a local matter, we stated that "[o]nly the plainly expressed will of the United States is to prevail

---

**9.** The spelling was changed to "Puerto" by Act May 17, 1932, c. 190, 47 Stat. 158.

against the presumption of local control over matters of local concern." *Lastra*, 2 F.2d at 815. We found no such intent in the Organic Act to deprive the Puerto Rican legislature of the power to extend workmen's compensation to these laborers.

Persuasive reasons are required to convince us to depart from our construction of the Organic Act, now the Puerto Rican Federal Relations Act, 48 U.S.C. § 731b *et seq.*, based as it was on fundamental propositions regarding the allocation of powers between the local territorial government and the federal government. These plaintiffs have not supplied.

In reaching our conclusion in *Guerrido* that the Longshoremen's Act of 1927 did not apply to Puerto Rico, we referred to § 3(a) of that Act, Pub.L.No.803, c. 509, § 3(a), 44 Stat. 1426, which provided:

"Compensation shall be payable under this Act in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any dry dock) and <u>if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law.</u> . . ." [Emphasis supplied.]

We then stated,

"We think that by the language which we have quoted [the language underlined above] Congress intended to prevent its new compensation act from superseding the existing Puerto Rican compensation act with respect to longshoremen, such as the present libellant, who are injured in Puerto Rican waters."

*Guerrido*, 234 F.2d at 356.

In light of the legislative history of the 1927 Act and of Congress' previous efforts to relegate to state compensation statutes the remedy for longshoremen injured on navigable waters within a state's borders, the proviso permitting recovery only when compensation " 'may not validly be provided by State law' " had been interpreted to cover "the same field which the *Jensen* line of decision excluded from state compensa-

tion laws." *Parker v. Motor Boat Sales*, 314 U.S. 244, 249, 250, 62 S.Ct. 221, 225, 86 L.Ed. 184 (1941); *Davis v. Department of Labor*, 317 U.S. 249, 252–53, 63 S.Ct. 225, 87 L.Ed. 246 (1942). The purpose of the Act was not to preempt state legislation but to fill the gap states had been rendered powerless to fill by *Jensen*. Our conclusion in *Guerrido* that the Longshoremen's Act did not apply to Puerto Rico was in accord with the basic approach of the Act—permitting operation of local compensation statutes where not precluded by *Jensen*.

Both plaintiffs and amicus curiae Department of Labor view our holding in *Guerrido* as hinging upon a mutually exclusive interpretation of the "may not validly be provided" clause, *i. e.*, that the Longshoremen's Act applies only where a state (and Puerto Rico) could not validly enact a compensation scheme. They argue this theory of mutual exclusivity was first undermined by *Calbeck v. Travelers Insurance Company*, 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1962), decided subsequent to *Guerrido*, and then eliminated by the 1972 amendments to the Act which deleted the "may not validly be provided" clause, with the result that *Guerrido* must fall and the Act must be interpreted to cover Puerto Rico. While the interpretation of § 3(a) has undergone change, *Guerrido* is unaffected.

A limited area in which both state compensation acts and the federal act might operate was recognized in *Calbeck v. Travelers Insurance Company*. The plaintiffs therein had been injured while completing construction of vessels afloat upon navigable waters. Subsequent to *Jensen* but prior to the enactment of the Longshoremen's Act, the Supreme Court had held a state compensation act applicable in the same situation as presented by *Calbeck* under the maritime but local exception to *Jensen*. *Grant Smith-Porter Ship Co. v. Rohde*, 257 U.S. 469, 42 S.Ct. 157, 66 L.Ed. 321 (1922). Thus, under the mutually exclusive theory of § 3(a), the plaintiffs in *Calbeck* would not have been eligible for federal benefits. Noting the difficulties engendered by the maritime but local doctrine and the hard-

ship to a plaintiff who guessed incorrectly into which category he fell, the Court interpreted § 3(a) to avoid these problems and stated that "Congress invoked its constitutional power so as to provide compensation for all injuries sustained by employees on navigable waters whether or not a particular injury might also have been within the constitutional reach of a state workmen's compensation law." *Calbeck*, 370 U.S. at 117, 82 S.Ct. at 1198.

Plaintiffs argue that since their injuries occurred on navigable waters they are covered by the Longshoremen's Act as construed in *Calbeck*. That opinion must be interpreted in, and limited to, its context. The Court construed the Longshoremen's Act with reference to two specific problems confronting Congress in 1927—providing compensation for a category of maritime injuries states could not reach and eliminating the uncertainty in the administration of compensation wrought by the maritime but local doctrine. *Calbeck*, 370 U.S. 119–20, 82 S.Ct. 1196. Accordingly, the Court discerned a Congressional intent to provide federal compensation not simply where *Jensen* in fact barred the operation of state statutes, but in every case "where *Jensen* might have seemed to preclude state compensation" *Id.* at 120–21, 125, 82 S.Ct. at 1200.

Puerto Rico falls in neither of these categories. It has not been subject to the problems stemming from *Jensen* which necessitated both the enactment of the Longshoremen's Act in the first place and the Supreme Court's evolving interpretations thereof. Thus, *Calbeck*, tailored to remedy specific problems not present in Puerto Rico, does not affect our holding in *Guerrido*.

Similarly, plaintiffs take too large a view of the significance of the elimination of the "may not validly be provided" clause by the 1972 amendments to the Longshoremen's Act. The deletion of this clause was required to implement the Congressional purpose to remedy the "disparity in benefits payable for death or disability for the same type of injury depending on which side of the water's edge and in which State the accident occurs." H.R.Rep.No.92–1441, 92d Cong., 2d Sess. 10 (1972); *reprinted in* U.S. Code Cong. & Admin.News, pp. 4698, 4707. The former act extended only to injuries occurring upon the navigable waters. Thus, a longshoreman injured while working on board a ship could recover under the federal act while a longshoreman injured a few feet away from the ship on a pier was remitted to the state compensation remedy. *Stockman v. John T. Clark & Son of Boston*, 539 F.2d 264, 270 (1st Cir. 1976), *cert. denied*, 433 U.S. 908, 97 S.Ct. 2972, 53 L.Ed.2d 1092 (1977). It was intended that the fortuity whether injury occurred on land or over water not control the amount of recovery. H.R.No.92–1441 at 10. Accordingly, coverage was extended shoreward from the water's edge to

"any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel."

33 U.S.C. § 903(a). As these areas included areas in which there was no question state compensation laws might validly operate, *see*, for example, *Nacirema Operating Company v. Johnson*, 396 U.S. 212, 221, 90 S.Ct. 347, 24 L.Ed.2d 371 (1969) (no coverage under federal act for injuries occurring on a pier affixed to land), elimination of the "may not validly be provided" clause was required lest the extension landward be defeated.

We interpret the 1972 amendments in light of the object they were designed to achieve. The evil of the old act, bifurcated coverage for essentially the same employment, *Stockman v. John T. Clark & Son of Boston*, 539 F.2d at 275, never obtained in Puerto Rico where PRWACA provides a uniform remedy for all workmen. We cannot view the elimination of the "may not validly be provided" clause as extending coverage of the act to Puerto Rico.

■ Plaintiffs also rely on the interaction of 33 U.S.C. § 902(9),[10] which defines United States to include territories, with § 903's coverage provision. *Citing Moreno Rios v. United States*, 256 F.2d 68 (1st Cir. 1958), holding the Narcotic Drugs Import and Export Act, which defined United States in the same terms as does 33 U.S.C. § 902(9), applicable to Puerto Rico, plaintiffs urge that the Longshoremen's Act must similarly apply to Puerto Rico. Analysis is not as simplistic as plaintiffs would have it. The term "territory" does not have a fixed and technical meaning accorded to it in all circumstances, and thus Puerto Rico may be found to be included within one act whose coverage extends to territories of the United States and excluded from another. *Americana of Puerto Rico, Inc. v. Kaplus*, 368 F.2d 431, 436 (3d Cir. 1966), *cert. denied*, 386 U.S. 943, 87 S.Ct. 977, 17 L.Ed.2d 874 (1967). "[W]hether Puerto Rico comes within a given congressional act applicable in terms to a 'territory,' depends upon the character and aim of the act." *Puerto Rico v. The Shell Company*, 302 U.S. 253, 258, 58 S.Ct. 167, 169, 82 L.Ed. 235 (1937). We have already noted how both the 1927 Act and the 1972 amendments thereto were in response to specific problems ultimately stemming, as a result of *Jensen*, from the states' inability to apply their compensation statutes to longshoremen injured on state territorial waters, problems which have not afflicted Puerto Rico. Thus, as an original matter, we would be hard pressed to find Puerto Rico within the aim of the Act; but additional considerations pertain.

■ There is no indication in the legislative history or otherwise that Congress intended to depart from our longstanding interpretation that the Act does not extend to longshoremen injured on Puerto Rican navigable waters. Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change. *Lorillard v. Pons*, 434 U.S. 575, 580, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978); *NLRB v. Gullett Gin Company*, 340 U.S. 361, 365–66, 71 S.Ct. 337, 95 L.Ed. 337 (1951); 2A C. Sands, *Statutes and Statutory Construction* § 49.09 (4th ed. 1973). Here, § 902(9) was left unchanged by the 1972 amendments, Pub.L.No.92–576, 86 Stat. 1251, and § 903 was amended only in the specifics discussed earlier to extend coverage shoreward. Hence, we conclude the Longshoremen's Act does not apply to Puerto Rico.[11]

■ Plaintiffs argue the exclusion of longshoremen injured upon Puerto Rican navigable waters from the coverage of the Longshoremen's Act constitutes an invidious discrimination in violation of the fifth amendment to the Constitution. Congress, however, need not extend every federal program to Puerto Rico. *See Califano v. Torres*, 435 U.S. 1, 3 n. 4, 5 n. 7, 98 S.Ct. 906, 55 L.Ed.2d 65 (1977). A rational basis for the exclusion exists in the disruption the federal benefits could reasonably be thought to work on the Puerto Rican economy. *Id.*, 435 U.S. at 5 n. 7, 98 S.Ct. 906.

■ We come then to plaintiffs' third argument, that *Lugo Sanchez* does not gov-

---

10. Section 902(9) provides:
"The term 'United States' when used in a geographical sense means the several States and Territories and the District of Columbia, including the territorial waters thereof."

11. Plaintiffs also refer to § 9 of the Organic Act, now 48 U.S.C. § 734, which provides "[t]he statutory laws of the United States not locally inapplicable, except as hereinbefore or hereinafter otherwise provided, shall have the same force and effect in Puerto Rico as in the United States . . . ." Once we have examined a specific piece of legislation and concluded it does not apply to Puerto Rico, as we have done with the Longshoremen's Act, this section adds nothing further to our analysis. The primary impact of § 734 has been its attestation that Congress, under the terms of the compact with Puerto Rico, has retained the authority to apply federal legislation to Puerto Rico without obtaining Puerto Rico's further assent. *Caribtow Corp. v. Occupational Safety and Health Review Commission*, 493 F.2d 1064, 1066 (1st Cir.), *cert. denied*, 419 U.S. 830, 95 S.Ct. 52, 42 L.Ed.2d 55 (1974); *Moreno Rios v. United States*, 256 F.2d 68, 71 (1st Cir. 1958); *Americana of Puerto Rico, Inc. v. Kaplus*, 368 F.2d 431 (3d Cir. 1966), *cert. denied*, 386 U.S. 943, 87 S.Ct. 977, 17 L.Ed.2d 874 (1967).

ern these cases. First, plaintiffs suggest that because the Administrator of the State Insurance Fund appears as plaintiff in some of these suits, *Lugo Sanchez* might not pertain. Section 32, set out in part at note 4, which authorizes actions by employees against persons other than their employers who may be responsible for the injuries sustained, also provides that the Manager of the State Insurance Fund "may subrogate himself in the rights of the workman or employee or his beneficiaries to institute the same action . . . ." Clearly, the Manager's rights are dependent upon the employee's rights; if the employee's action is barred because the defendant is the employee's statutory employer, so too is the Manager's action barred.

■ Next, plaintiffs, citing *Velez v. Halco Sales, Inc.*, 97 P.R.R. 426 (1969), argue that the existence of an indemnity agreement between defendant shipowners and plaintiffs' employers, the independent stevedoring contractors, (indemnity being premised on the warranty of workmanlike performance under *Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corporation*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956)), works an exception to the statutory employer rule. The employer of the injured workman in the *Halco Sales* case had leased equipment which malfunctioned causing the workman's injuries. The employee sued the owner of the equipment who in turn sought indemnity from the employer under the terms of the lease agreement by which the employer had assumed all responsibility for claims arising out of the use of the equipment. Under the exclusive remedy provision of PRWACA, 11 L.P.R.A. § 21, the employer, of course, would not have been directly liable in tort to his employee. The court held, however, that the employer could waive his immunity by entering into such an indemnity agreement but noted that the agreement could not alter the owner's direct liability to the workman. *Halco Sales*, 97 P.R.R. at 434. Thus, *Halco Sales* in no manner affects the rules of liability pertaining to the primary suit, the suit by the injured employee. If the workman cannot recover because of the statutory employer doctrine, the indemnity issue does not arise.

■ Third, plaintiffs, invoking *Barrientos v. Government of the Capitol*, 97 P.R.R. 539 (1969) which holds that a prime contractor may not escape liability for damages by delegating work "which in the natural course of events entails some risk unless special precautions are taken" to an independent contractor, argues this primary nondelegable liability rule is an exception to *Lugo Sanchez.* Defendant shipowners, however, are not escaping liability by contracting loading operations to a stevedore; they are subject to compensation liability as set forth in PRWACA.

■ Next, plaintiffs contend *Lugo Sanchez* does not preclude their suits under the Puerto Rico direct action statute, 26 L.P.R.A. §§ 2001 *et seq.*, against defendants' insurers. Plaintiffs, lacking a right of action against defendants, cannot recover from defendants' insurers. *Ruiz Rodriguez v. Litton Industries Leasing Corp.*, 574 F.2d 44 (1st Cir. 1978); *Alonso Garcia v. Flores Hermanos Cement Products, Inc.*, No. 0–78–158 (Supreme Court of Puerto Rico, Oct. 24, 1978).

The amicus brief argues that the *Lugo Sanchez* statutory employer doctrine may not pertain to the relationship between a longshoreman and a vessel owner because "it is not at all clear that a shipowner's relationship to a stevedore is that of a 'principal employer' to a 'contractor or independent subcontractor employed or contracted by said employer' within [the meaning of 11 L.P.R.A. § 20] and the *Lugo Sanchez* opinion, so as to make the former the 'statutory employer' of the latter's workers." Brief at 13. Furthermore, the amicus contends that a company (a shipowner) who does not itself have any direct employees covered by the Puerto Rico statute, and that therefoː ɔ neither files any report of wages nor contributes any premium to the State Insurance Fund under § 20, may not have statutory employer status.

The district court, in granting defendants' motions for summary judgment which were based on the contention that defendants were plaintiffs' statutory employers and hence immune from suit, necessarily resolved this question of Puerto Rican law against plaintiffs. Much deference is accorded to a district court's construction of the law of the locality in which it sits. *Diaz-Buxo v. Trias Monge*, 593 F.2d 153 at 156 (1st Cir. 1979); *Berrios Rivera v. British Ropes, Ltd.*, 575 F.2d 966, 970 (1st Cir. 1978); *Graffals Gonzalez v. Garcia Santiago*, 550 F.2d 687, 688 (1st Cir. 1977). The fact that the *Lugo Sanchez* decision made no effort to distinguish *Colon Nunez v. Horn-Linie*, 423 F.2d 952, which had presented the same factual situation as that present here, but rather flatly stated that *Colon Nunez* "is contrary to the constant doctrine maintained by the case law and the commentators," reinforces our view that the district court did not err in its construction of Puerto Rican law.

Plaintiff Claudio Torres, the trucker's helper (see note 1), also claims he is not within the purview of the statutory employer doctrine. We note that the district court took a broad view of the issues it decided and did not make any specific rulings on the points raised by plaintiff. Proceeding out of an abundance of caution, we think this plaintiff should be given the opportunity to attempt to persuade the district court his claim is distinguishable and we therefore vacate and remand for reconsideration. As to the other cases, we affirm.

*So ordered.*