**Olga Rivera Vda. De COELHO; Joseph M. Coelho, Jr.; Mary L. Bickston; and Lydia Comstock in her representative capacity as mother with patria potestas of her minor children Thomas M. Coelho and John R. Coelho, Plaintiffs,**

v.

**SEABOARD SHIPPING CORPORATION; Moran Towing Corporation; Union Carbide Caribe, Inc.; Phillips Puerto Rico Core, Inc.; S.S. T/B Chemical No. 1, her engines, boilers, machinery, appurtenances, furniture and equipment; ABC Insurance Company; DEF Insurance Company; GHI Insurance Company; JKL Insurance Company; XYZ Insurance Company, Defendants.**

Civ. No. 74–0562.

United States District Court,
D. Puerto Rico.

March 31, 1982.

Gustavo A. Gelpi, Feldstein, Gelpi, Hernández & Castillo, San Juan, P. R., for plaintiffs.

Charles A. Cordero, San Juan, P. R., for Union Carbide.

Eli B. Arroyo, San Juan, P. R., for defendant Phillips P. R. Core.

A. M. Bird, San Juan, P. R., for defendant Seaboard.

## MEMORANDUM OPINION AND ORDER

CEREZO, District Judge.

This is an action in admiralty stemming from the death of seaman Joseph M. Coelho on May 15, 1973 in the territorial waters of Puerto Rico. His widow and children filed this *in personam* action under general maritime law and Article 1802 of the Civil Code of Puerto Rico, *P.R. Laws Ann.*, Tit. 31 Sec. 5141, against Seaboard Shipping Corporation ("Seaboard"), Moran Towing Corporation, Union Carbide Caribe, Inc. ("Union Carbide"), Phillips Puerto Rico Core, Inc. ("Phillips") (and their respective insurers which have yet to be named)[1] and an *in rem* action against the barge S.S. T/B Chemical No. 1 and its machinery, equipment, etc. Mr. Coelho's body was found in the pump room of this barge. His death is said to have been caused by inhalation of benzene fumes. We must decide several motions for summary judgment and a motion to dismiss filed by the defendants which have been periodically supplemented with extensive memoranda. Seaboard has also opposed plaintiff's motion of June 18, 1976[2] to file an amended complaint substituting Moran Towing and Transportation Co., Inc. for Moran Towing Corporation. Moran Towing of P.R., Inc. (Moran-P.R.) filed an answer as claimant charter owner of the barge.

Having considered the documents submitted by the parties, the voluminous record engrossed by eight years of supplemented motions and the oral argument offered at the July 21, 1981 hearing, the Court finds the following facts to be undisputed:

At the moment of his death seaman Coelho was employed by Moran-P.R. as a tankerman. The barge, owned by Seaboard, was on charter to Moran-P.R. Phillips had in turn chartered with Moran-P.R. for the transportation of a cargo of chemicals, including benzene. The barge was on the pier facilities of Union Carbide with a cargo of benzene when the accident occurred. No employee of Union Carbide had entered the barge's pump room before the accident, and the pumping of the benzene had not started yet. Moran-P.R. had insured its employees according to the requirements of Puerto Rico's Workmen's Accident Compensation Act, *P.R. Laws Ann.*, Tit. 11 Sec. 1 *et seq.* (PRWACA). After the general manager of

---

1. The United States was voluntarily abandoned as codefendant by plaintiffs.

2. This case was temporarily stayed by order of Judge Hernán G. Pesquera on October 28, 1977. It was referred to the undersigned on September 17, 1980.

Moran-P.R. filed the required accident report, the Manager of the Puerto Rico State Insurance Fund rendered a decision declaring that Joseph M. Coelho's death was related to his employment and fixing the corresponding compensation and the beneficiaries entitled to it.

The issues, as framed by the parties, are the following:

### (A) Seaboard's Motion

Defendant Seaboard seeks summary dismissal alleging that it is immune to the action on two grounds: 1) that, according to PRWACA and recent decisions of the Puerto Rico Supreme Court, it is a statutory employer and 2) that the charter to Moran-P.R. is of the bareboat or demise type whereby total control and responsibility passed to the charterer as *pro hac vice* owner. Plaintiffs refute this alleging that there is an issue as to the existence of the control necessary for the establishment of the demise, that there is no veracity as to the date of the document according to Puerto Rico Law, that, even if the charter was of the bareboat type, controversy exists as to the time when the unseaworthy condition that caused Mr. Coelho's death originated and that Seaboard was not decedent's statutory employer. In its reply Seaboard contends that the death was caused by decedent's own negligence in failing to install a ventilator in the pump room and that the charter contract should be interpreted according to general maritime law.

### (B) Moran Towing Corp.'s Motion

Moran Towing Corp. seeks summary dismissal on the ground that it has no relationship to the event that led to Coelho's death. Plaintiffs allege that Seaboard directed Moran Towing Corp.'s employee, Mr. Arthur Blon, to attend the annual surveys and inspections of the barge by the U. S. Coast Guard; that on these inspections Mr. Blon misrepresented to the Coast Guard the type of chemicals that the barge would carry and that due to this the Coast Guard certified the barge as seaworthy and safe without considering if the barge was suitable to carry benzene safely.

### (C) Phillips' Motion

Phillips, in turn, urges dismissal of the action against it by alleging that the contract made with Moran-P.R. was a time charter agreement whereby the control and responsibility of the barge belonged to the latter. Phillips also alleges that it was Coelho's statutory employer, and therefore, immune from suit. Plaintiffs rely on Articles 9.01 and 9.03 of the contract between Phillips and Union Carbide which provide that Phillips would be responsible for the condition of the barges and conclude that it was negligent in failing to arrange for a proper barge to transport benzene.

### (D) Union Carbide's Motion

Union Carbide contends that it is not responsible in any way for the accident because prior to the tragic event none of its employees had been in the pump room and the benzene had still not been pumped from the barge and therefore, the accident must have occurred because of the condition of the barge. According to the contract between Union Carbide and Phillips, the latter assumed responsibility for the conditions of the barge. Plaintiffs do not contest that there were no employees of Union Carbide in the pump room nor that the benzene had not yet been pumped. Plaintiffs rely on Articles 9.02 and 9.03 of the contract between Phillips and Union Carbide which placed exclusive control of the benzene on Union Carbide at the time of the accident. Union Carbide replied stating that the benzene in itself did not cause the accident but rather the toxic fumes of the chemical. It contends that these fumes could only have escaped as a result of plaintiffs' own negligence, a defect in the barge, or the negligence of somebody else not related to Union Carbide since none of its employees had entered the barge to connect the hoses and the pumping had not commenced.

### (E) Moran-P.R.'s Motion

Claimant Moran-P.R. contends that as employer of the deceased it is immune from

suit and since it is also the charter owner of the barge then no *in rem* action can attach against the barge absent a valid claim against its owner.

Seaboard and Phillips' defense seems firmly entrenched on the concept of statutory employer as discussed by the Puerto Rico Supreme Court in *Lugo Sánchez v. A.F.F.*, 105 DPR 861 (1977) and *Widow of Orza v. P.R. Olefins, Inc.*, 107 DPR 782 (1978). According to these cases, a principal or prime contractor may be immune from suit by an employee of a subcontractor if either the principal or the subcontractor has insured the employees with the Puerto Rico State Insurance Fund. In *García v. Friesecke*, 597 F.2d 284 (1st Cir. 1979) *cert. den.* 444 U.S. 940, 100 S.Ct. 292, 62 L.Ed.2d 306 (1979) and *Miró Martínez v. Compañía Trasatlántica Española, S.A.*, 643 F.2d 897 (1st Cir. 1981) our Circuit had the opportunity to examine these decisions and to adopt its position, regarding the application of this doctrine in matters dealing with maritime workers. Seaboard is correct as to the immunity extended to the statutory employer by PRWACA and this doctrine and its coverage of maritime workers that suffer employment related accidents in the territorial waters of Puerto Rico as was concluded by the Circuit Court. Plaintiffs have not contested the exceptional treatment given marine workers injured in the territorial waters of Puerto Rico and little needs to be added to the history of this special consideration. See: *García v. Friesecke, ante,* at 286–287. Therefore, if Seaboard or Phillips had been the statutory employers of Coelho they would have been immune from suit and summary judgment would ensue. However, codefendant's argument is based on a premise which has not been adequately proven and has been properly contested by plaintiffs. The mere incantation of the phrase "statutory employer" does not conjure a spell that automatically cloaks with immunity any party that contracted with the insured employer. The language in *García v. Friesecke* to the effect that the *Lugo Sánchez* doctrine precludes longshoremen or seamen from instituting negligence and unseaworthiness ac-tions against shipowners has been erroneously interpreted by Seaboard and Phillips as foreclosing *all* negligence and unseaworthiness actions against shipowners by maritime workers in Puerto Rico. Such a conclusion not only disregards the purpose of PRWACA, and the interpretations of this Act by the Puerto Rico Supreme Court but cannot even be reconciled with the Circuit Court's statements in the *Garcá* case.

 The statutory employer immunity is not a revelation suddenly descending from Mount Sinai in the *Lugo Sánchez* case. It had been previously applied and recognized by the Supreme Court of Puerto Rico. See the opinion of Blanco Lugo, J. in *Colón Santiago v. Comisión Industrial,* 97 PRR 203 (1969). One cannot rely solely on the *Lugo Sánchez* case to define this constantly evolving doctrine. A closer look at its development shows that codefendants have not evinced the primary factors that would justify considering its applicability to the facts in this case. A relation of employer-employee between the party claiming to be the statutory employer and the injured worker must first be established. In *Ruiz Díaz v. Vargas Reyes,* —— DPR ——, May 8, 1980 (80 JTS 44) the Supreme Court of Puerto Rico clarified that neither *Lugo Sánchez* nor its progeny extended the employer immunity to contractors that are in no way employers of the injured workers or where no employer-employee relationship exists:

In *Lugo Sánchez v. A.F.F.*, 105 DPR 861 (1977) we recognized the unfolding of the employer figure into the *direct* and the *statutory,* and the immunity that benefits either one of them when the requirement of Art. 19 of the Law (11 LPRA Sec. 20) of maintaining their employees insured has been complied with by any one of them. But neither *Lugo Sánchez* nor subsequent related cases, *Orza Rentas v. P.R. Olefins,* 107 DPR . . . (Oct. 20, 1978) (78 JTS 80) and *Rodríguez Cruz v. Union Carbide Grafito, Inc.,* 107 DPR . . . (Nov. 14, 1978) (78 JTS 92), in a strict observation of the aforecited Arts. 20 and 19 of the Law, extended immunity to a con-

tractor or subcontractor that is not an employer, in any way, of the injured worker. One who does not have with such a person the employer-employee relationship, ... is an element foreign to the juridical order of immunity available exclusively to employers, be they statutory or real-direct. To extend the immunity to contractors and subcontractors based on their common participation in the same project would be in detriment of the right of a worker to claim damages that he has not stipulated or waived in the historic form of exclusive insurance incorporated in our Worker's Accident Compensation Law.

The decisive factor of this immunity is the existence of that direct bond between the worker that suffers the injury and the employer in the course of whose employment and as a consequence of which the injury occurs ....

The mere contact or contractual relationship with the employer on the fringes of the contract of employment does not transmit the immunity and protection of the exclusive remedy of Art. 20 of the Law against a tort claim. (Our translation) 80 JTS 44 at 45.46.

The Court concluded that Section 31 of the PRWACA expressly permitted a separate action for damages by the injured employer or his survivors if the party alleged to be negligent was a third party unrelated to the employment relationship. The importance of this case decided after *Lugo Sánchez* and *Orza Rentas* is that it signals that the statutory employer doctrine does not limit an injured worker's right to bring an action for damages against a negligent third party. See: *Rivera de Vicenty ex rel. Ramos Marrero v. Socorro Lacot*, decided June 25, 1981 P.R. Supreme Court 81 JTS 60; *López Rodríguez v. Delamar*, 102 DPR 254, 258

(1974). Cf. *Vélez v. Halco Sales, Inc.*, 97 PRR 426 (1969) (The lessor of equipment used in a building construction was considered a third party unrelated to the construction workers.) *Widow of Andino v. WRA*, 93 DPR 168 (1966) (The WRA held liable as collaborator of the damage together with employer.) To hold otherwise, would place a worker that suffers an employment related accident in an unduly restricted position. Surely this was not one of the concessions that Puerto Rican workers exchanged for the benefits of no-fault insurance. Section 31 of the PRWACA clearly demonstrates a legislative mandate to preserve the worker's independent action against a third party.

In the present case, summary judgment is unwarranted since neither codefendants Seaboard nor Phillips have shown factual circumstances establishing an employer-employee relationship.[3] The statutory employer immunity in relation to Seaboard is in dire need of support since it has stated that Moran-P.R. had exclusive control of its operations and employees as charter owner of the barge. Surely a party that claims to have executed charter lease of a bareboat or demise character cannot simultaneously claim that the agreement with the charter owner (Moran-P.R.) is in the nature of a subcontract to transport materials controlled by the prime contractor (Seaboard) and for its benefit. The contractual relationship underlying each of these is necessarily irreconcilable with the other. See: *Ramos v. Beauregard*, 423 F.2d 916, 918 (1st Cir. 1970).

Aside from the question on the applicability of the statutory employer immunity, there is also controversy on the existence of a real bareboat or demise charter.[4] It is possible that in proving the exist-

---

**3.** Some jurisdictions have approached this problem by determining whether the activity carried by the subcontractor is one that is indispensable to the prime contractor and usually carried about by employees of the principal contractor. The past activities of the prime contractor in relation to the activities of the subcontractor are also helpful. See 1C, Larson: *Workmen's Compensation*, Sec. 49 (1980).

**4.** "To create a demise the owner of the vessel must completely and exclusively relinquish 'possession, command and navigation' thereof to the demisee ... anything short of such a complete transfer is a time or voyage charter or not a charter party at all." *Guzmán v. Pichirilo*, 369 U.S. 698 at 699, 82 S.Ct. 1095 at 1096, 8 L.Ed.2d 205 (1962).

ence of an employer-employee relationship, in order for Seaboard to avail itself of the statutory employer immunity, the real nature of the charter may be revealed and *vice versa*. This also strengthens the conclusion that the controversies are not ripe for summary adjudication. The cause of the accident, its relation to the alleged unseaworthiness of the barge and whether the unseaworthy condition existed before the demise[5] are all matters that need to be further explored. Although Seaboard may claim that the lack of a ventilator in the pump room was the real culprit and not a precharter unseaworthy condition, the circumstances of seaman Coelho's death involve myriad complex variables that deserve closer scrutiny. At this moment, to enclose the cause of death in a handy cause-effect formula is mere conjecture.

■ As to defendant Phillips' claim that it is not liable since the charter with Moran-P.R. was a time charter in which they had no control of the barge, at this stage such allegations cannot be ascertained since the copy of the contract offered in support thereof is undecipherable and has not been properly authenticated pursuant to the requirements of Rule 56(e) F.R.C.P. A party moving for summary judgment has the burden of establishing that there exists no controversy as to any material fact. *Gual Morales v. Hernández Vega*, 579 F.2d 677 (1st Cir. 1978). A cryptic document and the mere invocation of the doctrine of statutory employer are insufficient to deprive a party of his day in court.

The *in rem* claim against the barge is hinged on the future determination of the personal liability of the parties. See: *Ramos v. Beauregard*, 423 F.2d 916, 918 (1st Cir. 1970). Inasmuch as there exists substantial controversy on these relationships, and, in particular, the charter agreement of the barge, the *in rem* action cannot be dismissed.

■ Union Carbide's Motion for Summary Judgment, however, stands on firmer grounds. Movant has made reference to an affidavit and to the 7th Coast Guard Marine Board of Investigation transcript of the proceedings investigating the accident. In essence, it contends that none of its employees had entered the barge and that the benzene had not yet been pumped when the accident occurred. In a laudable display of honesty, plaintiffs admitted that they could not contest Union Carbide's statements as to its employees. According to plaintiffs, Union Carbide's liability is premised on the contract of sale between it and Phillips. However, upon examining the allegations of the complaint which deal with Union Carbide's liability, we find that the sole cause of action against Union Carbide is based on the alleged negligent activities of its employees in discharging the benzene. If plaintiffs concede that no Union Carbide employee entered the barge before the accident, and no benzene had yet been pumped from the barge, it could not possibly have been negligent in the discharge of the benzene when the event occurred. Even though from the terms of the Product Sale and Purchase Agreement[6] between Phillips and Union Carbide it would be safe to conclude that Union Carbide had the benzene in its possession and was responsible for any damage caused by it, plaintiffs have not shown what actions, aside from the allegations in the complaint effectively pierced by codefendant, constitute negligent acts by Union Carbide that

**5.** We infer from the expressions of our Circuit that an unseaworthy condition existing before the creation of a demise may render the owner of a vessel liable. *Ramos v. Beauregard, Inc.*, 423 F.2d 916, 918 (1st Cir. 1970) *cert. den.* 400 U.S. 865, 91 S.Ct. 101, 27 L.Ed.2d 104 (1970) citing: *Ruiz Pichirilo v. Maysonet*, 290 F.2d 812, *Cannella v. Lykes Bros. Steamship Co.*, 174 F.2d 794 (2nd Cir.) *cert. den.* 338 U.S. 859, 70 S.Ct. 102, 94 L.Ed. 526 (1949), *Grillea v. United States*, 229 F.2d 687, 689 (2nd Cir.

1956). See also: *Baker v. Raymond International, Inc.*, 656 F.2d 173, 181–185 (5th Cir. 1981).

**6.** The contract provides for the sale by Union Carbide to Phillips of BTX (a chemical containing benzene) after Phillips processes the BTX the benzene is separated and sold to Union Carbide. It was during this second leg of the arrangement that the accident occurred. The point of delivery is always at the Phillips plant.

would make it liable to them. Although the contract may establish the responsibilities between the contracting parties of whatever *ex delicto* liability to third parties that may arise, it *per se* does not create a cause of action on which plaintiffs can rest their entire case against Union Carbide.

■ The procedural instrumentation of a Motion for Summary Judgment is a two-way street. When the moving party establishes with its burden of proof the inexistence of controversy as to material facts, the opponent must present an adequate indication supported by substantial evidence, going beyond mere conclusory statements and the allegations of the complaint, that there exist disputed material facts that warrant trial adjudication. *Mas Marques v. Digital Equipment Corp.*, 637 F.2d 24 (1st Cir. 1980), *Hahn v. Sargent*, 523 F.2d 461 (1st Cir. 1975) *cert. den.* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 54. Plaintiffs have failed to come forth with adequate opposition to the factual allegations duly supported by defendant Union Carbide in its Motion for Summary Judgment.

We shall now consider the motion to amend the complaint. Plaintiffs have requested leave to amend in order to substitute defendant Moran Towing and Transportation Co., Inc. for Moran Towing Corp. It appears that there are three similarly named corporations: Moran Towing of Puerto Rico, Inc. (Moran-P.R.—the employer); Moran Towing Corp. (in their answer to the complaint codefendants admit that Moran Towing Corp. is a corporate entity organized and existing by virtue of the laws of the state of New York) and Moran Towing and Transportation Co., Inc. The cause of action against Moran Towing Corp. is based on its alleged ownership of the tugboat that pulled the barge and on the misrepresentation made by Moran Towing Corporation's employee to the Coast Guard as to the cargo that the barge would transport. Moran Towing Corp. was served through the Secretary of State of Puerto Rico according to Rule 4.7 of the Rules of Civil Procedure of Puerto Rico in effect at that time (1974). Later, plaintiffs admitted that Moran Towing Corp. was not the owner of the tugboat and abandoned this part of its cause of action. They insisted, however, that Moran Towing Corp. was liable since its employee Arthur Blon, in order to obtain the necessary certification of approval from the Coast Guard, misinformed the officials as to the cargo contents that the barge would transport. Plaintiffs contend that if the Coast Guard had been provided with the correct information, it would have declared the barge unseaworthy unless adjustments were made. Apparently they relied on the belief that the name of the company employing Blon was Moran Towing Corp. when in reality his employer was Moran Towing & Transport Co. This fact came to plaintiffs' attention when Seaboard, Moran Towing Corp. and Moran-P.R., in their reply to plaintiffs' opposition to summary judgment (May 19, 1976), stated for the first time that Blon was an employee of Moran Towing and Transportation Co., Inc., a corporate entity not a party to the suit. Seaboard, Moran-P.R. and Moran Towing Corp. opposed the request to amend alleging that the action against Moran Towing and Transportation Co., Inc. was time barred by the one year statute of limitation and that this separate corporate entity was in no way concerned with the pending action and could not have known that the action could have been filed against it.

■ Rule 15 (F.R.C.P.) grants sufficient discretion to permit leave to amend a complaint when it is necessary to further the interests of a just adjudication. "[A]nd leave shall be freely given when justice so requires." Rule 15(a) F.R.C.P. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Ondis v. Barrows*, 538 F.2d 904, 909 (1st Cir. 1976). Subsection (c) of the Rule states that an amendment adding a party will relate back to the date of the original pleading if: (a) the claim against the new party arose out of the same conduct, transaction or occurrence set forth in the original pleading; (b) the new party received sufficient notice of the action to enable it to present an adequate defense on

the merits, and (c) the new party knew or should have known that but for the mistaken identity the action would have been brought originally against it. *Hernández Jiménez v. Calero Toledo*, 604 F.2d 99, 102 (1st Cir. 1979). Though it appears from the record that plaintiffs were inattentive to the transcript of the investigation proceedings before the Coast Guard where the correct name of Blon's employer could have been found, we find this insufficient to deny them leave to include the proper defendant. The complaint states a sufficiently clear cause of action based on the participation of Moran Towing and Transport Co., Inc.'s employee in the Coast Guard annual survey of the barge. It is exactly this same claim that plaintiffs wish to direct against the proper party. The interlocking and common officers of the three Moran corporations, the similarity in names and the closely related operations are factors that may be considered in determining an identity of interests between the corporations. *Hernández Jiménez, ante*, at 103. The action against Moran Towing Corp. and the *in rem* proceeding against the barge whose alleged charter owner Moran Towing Co. of Puerto Rico answered as claimant also indicates sufficient notice to Moran Towing and Transport Co. of an impending action against it. The fact that there were administrative proceedings before the Puerto Rico State Insurance Fund and before the U. S. Coast Guard would also suggest that notice was abundant and that the new party had sufficient information both to prepare for a potential law suit and to consider its possibility. Moran Towing and Transportation Co. Inc.'s employee's attendance at the Coast Guard inspections of the barge and the specific allegations of the complaint should have placed Moran Towing & Transport Co., Inc. on sufficient notice so as to know which one of the corporations in the Moran triad plaintiffs were referring to. Instead Moran Towing Corp. chose to remain silent and take advantage of plaintiffs' mistake. See: *Travelers Indemnity Company v. United States*, 382 F.2d 103 (10th Cir. 1967).

Although these factors by themselves may not compel the relation back of the amendment, an integral examination of all of them reveals compliance with the three conditions of Rule 15(c) and lead to the conclusion that leave to amend must be allowed. However, plaintiffs' neglect requires that they be sanctioned.

Accordingly, it is ORDERED that plaintiffs amend their complaint to substitute Moran Towing and Transport Co., Inc. for Moran Towing Corp. within ten days after notice and that plaintiffs deposit with the Clerk of the Court the amount of $500.00 as sanctions to be paid to Moran Towing and Transport Co. The Motions for Summary Judgment and for Dismissal filed by Seaboard, Moran Towing Corp. Moran-P.R. (as claimant on behalf of the barge) and Phillips are hereby DENIED. The Motion for Summary Judgment filed by Union Carbide is hereby GRANTED. The major issues pending adjudication are summarized as follows: (a) whether codefendants Seaboard and Phillips can benefit from the statutory employer immunity, (b) whether the cause of Coelho's death was due to an unseaworthy condition of the barge which existed before the charter, and (c) whether the charter between Moran-P.R. and Seaboard is a bareboat or a time charter. This case is referred to the U. S. Magistrate to set a discovery timetable so that the parties may supplement their existing discovery by focusing on these issues, in particular on the statutory employer immunity. The parties are warned that this additional discovery shall be brief and to the point. It shall not be cause for further delay in this already overdue case.

SO ORDERED.