Carmen LUSSON, et al., Plaintiffs, Appellants,

v.

James CARTER, et al., Defendants, Appellees.

No. 82–1693.

United States Court of Appeals, First Circuit.

Argued Feb. 10, 1983.

Decided April 7, 1983.

Gustavo A. Gelpi and Hydee R. Feldstein, Old San Juan, P.R., with whom Feldstein, Gelpi & Hernandez, Old San Juan, P.R., was on brief, for appellants.

Jose Antonio Fuste, Hato Rey, P.R., with whom Jimenez & Fuste, Hato Rey, P.R., was on brief, for appellees Caribe Tugboat Corp. and Shipowners & Merchants Towboat Corp.

Lourdes Del Carmen Rodriguez, Asst. Sol. Gen., Dept. of Justice, San Juan, P.R., with whom Miguel Pagan, Acting Sol. Gen., San Juan, P.R., was on brief, for appellees Carlos Romero Barcelo, et al.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

This appeal is the result of another attempt by Puerto Rican plaintiffs to persuade us that section 8 of the Federal Relations Act, 48 U.S.C. § 749, which authorizes Puerto Rico to displace federal maritime remedies with its own compensation scheme for maritime employees injured in Puerto Rican waters, and sections 19 and 21 of the Puerto Rico Workmen's Accident Compensation Act (PRWACA), 11 L.P.R.A. §§ 19 and 21, which limit the remedies available to those employees to the compensation provided by the statute, are unconstitutional. Once again, we are unpersuaded.

This determination, however, does not entirely dispose of plaintiffs' appeal. They also urge that even if Puerto Rico's compensation scheme is constitutional, the district court erred in granting summary judgment to the defendants, Caribe Tugboat Corporation (Caribe) and Shipowners & Merchants Towboat Corporation (Shipowners), because there were unresolved issues of fact as to whether the Puerto Rico statute applies to the parties to this case. They also urge that dismissal of their complaint, on eleventh amendment grounds, against the President of the United States, the Governor of Puerto Rico and the Administrator of the State Insurance Fund, was improper.

Because the major thrust of plaintiffs' complaint was aimed at challenging the constitutionality of the Puerto Rico workmen's compensation scheme, the procedural history of this case is unusual and bears on our procedural analysis. Our focus, therefore, in reviewing plaintiffs' challenge to the orders disposing of their claims, has been to determine whether plaintiffs had a fair opportunity to bring to the court's attention material issues of fact that would render summary disposition of their claims improper. As to the claim against Caribe, we find that plaintiffs had ample opportunity to present to the court facts that would raise questions as to the applicability of Puerto Rican law to their claims. Their failure to do so bars them from insisting now that the court did not know enough to be sure that Puerto Rican law should apply. Plaintiffs can be similarly faulted for their failure to respond to the court's invitation to present any evidence relevant to the defense urged by Shipowners—that it was not responsible for an unseaworthy condition that did not predate the demise charter granted to Caribe. Because the court did not rely on that defense, however, and instead granted summary judgment on a ground of which plaintiffs arguably had insufficient notice and which may reflect a misperception of Puerto Rican law, we find it necessary to vacate that portion of the court's judgment and remand it for reconsideration and, perhaps, further factual development.

## Background

Plaintiffs are the dependent widows and children of two seamen, Louis Lusson and Robert Bousson, who died as a result of injuries they sustained on December 17, 1976, while working aboard the tug "Sea Racer" in the harbor of San Juan, Puerto Rico. The decedents were employed by Caribe, a Louisiana corporation authorized

to do business in Puerto Rico. Shipowners, a California corporation, owned the tug. Under Puerto Rican law, if a seaman or maritime worker is covered by the PRWACA, his only remedy against his employer is the compensation provided under the statute. It was stipulated by the parties that Caribe had insured its seamen working in Puerto Rican waters and that benefits under the PRWACA would be paid to the plaintiffs. Plaintiffs, however, want to be able to recover against Caribe and Shipowners under the Jones Act, 46 U.S.C. § 688, and under the general maritime law.

On May 9, 1977, plaintiffs brought suit against the President of the United States, the Governor of Puerto Rico and the Administrator of the State Insurance Fund, urging the court to declare section 749 of the Federal Relations Act and sections 19 and 21 of the PRWACA unconstitutional and to enjoin its enforcement against them. On July 11, 1977, Caribe moved to intervene as a defendant and on August 11, 1977, plaintiffs amended their complaint to include a claim for damages under the Jones Act against Caribe. On November 28, 1977, plaintiffs again amended their complaint to include a claim for damages for negligence and unseaworthiness against Shipowners.

Before the filing of plaintiffs' second amended complaint, the parties, on August 17, 1977, met with a United States Magistrate at an in chambers conference and submitted a Stipulation of Material Fact which, according to the Magistrate's report of the meeting, "makes unnecessary any Evidentiary Hearing." The plaintiffs were granted until September 10, 1977 to file a brief in support of their complaint and defendants were granted 15 days to reply. The parties entered an "Additional Stipulation" on September 2, 1977.

After receiving memoranda from plaintiffs and Caribe, the court on November 10, 1977, stayed consideration of the legal is-

sues of the case pending resolution of *Garcia Serrano v. Gulf Atlantic Towing Co.,* Civil Number 76–347, which posed similar questions. The court instructed, however, that the stay should not obstruct discovery or other related proceedings in the case. On April 18, 1979, in *Garcia v. Friesecke,* 597 F.2d 284 (1st Cir.), *cert. denied,* 444 U.S. 940, 100 S.Ct. 292, 62 L.Ed.2d 306 (1979), we affirmed our position that the Puerto Rican Legislature may validly enact legislation inconsistent with the general maritime law, that the PRWACA is such legislation, and that the PRWACA provides the exclusive remedy for longshoremen injured on Puerto Rican waters against their employers. On March 21, 1980, co-defendants Caribe and Shipowners requested the court to vacate the stay order and, taking the facts as stipulated, to dismiss the case against Caribe on the basis of *Fonseca v. Prann,* 282 F.2d 153 (1st Cir.1960), and *Caceres v. San Juan Barge Corp.,* 520 F.2d 305 (1st Cir. 1975)[1] and against Shipowners on the basis of *Ramos v. Beauregard, Inc.,* 423 F.2d 916 (1st Cir.1970).[2] Plaintiffs opposed the motion, urging the existence of issues of material fact crucial to a determination whether Puerto Rican law should apply to the claim against Caribe, whether Shipowners had parted with control of the Sea Racer and when the unseaworthy condition arose. The plaintiffs also reasserted their constitutional challenge to the exclusion of Puerto Rican seamen from the rights and benefits of federal legislation, but insisted that that challenge need not be addressed if the court decided the choice of law issue in their favor.

On April 7, 1980, the Commonwealth defendants moved for dismissal of the complaint. (The United States had moved to dismiss the complaint in August, 1977). Oral argument was had on all pending motions on November 21, 1980. According to the court's Minutes of Proceedings, the is-

---

1. *Fonseca* and *Caceres* stand for the proposition that the exclusive remedy of a seaman injured in Puerto Rican waters against his employer is that provided by the PRWACA.

2. *Ramos v. Beauregard* stands for the proposition that a shipowner is not responsible for unseaworthy conditions arising during a demise charter when he has no right to control and no opportunity to correct the defects.

sues addressed included the "demise charter issue and [the] unseaworthiness of the Tugboat Sea Racer." The court granted the parties three months to conduct any additional discovery and "to inform thereafter if an evidentiary hrg. is necessary or if case is to be set for trial." No further motions were filed. On April 23, 1981, the court dismissed the complaint as to the Commonwealth and federal government defendants. Judgment was entered on May 7, 1981. On July 14, 1982, the court dismissed the complaint as to the two remaining defendants. Judgment was entered on July 20, 1982. Plaintiffs appeal from both orders dismissing their claims.

### 1. Constitutional Issues

 Plaintiffs' primary argument on appeal is that the court erred in deciding that Puerto Rican law should apply in this case and that the application of Puerto Rican law rendered both Caribe and Shipowners immune from suit by plaintiffs. Should we decide plaintiffs' choice of law and statutory issues against them, they also renew their constitutional challenge to the Puerto Rican statutory scheme. Taking the latter issue first, we reaffirm what we have said several times before. The Puerto Rican legislature may validly enact legislation inconsistent with the general maritime law. *See Garcia v. Friesecke,* 597 F.2d 284 (1st Cir.1979); *Fonseca v. Prann,* 282 F.2d 153 (1st Cir.1960); *Guerrido v. Alcoa Steamship Co.,* 234 F.2d 349 (1st Cir.1956). Included in that authority is Puerto Rico's right to provide that the injured worker's remedy under Puerto Rico's worker's compensation statute is the exclusive remedy available to him or his survivors against his employers. *Garcia, supra,* 597 F.2d at 288–89, 293–94. *See also Lugo Sanchez v. Puerto Rico Water Resources Authority,* 105 D.P.R. 861 (1977). The fact that in this case the PRWACA displaces Jones Act remedies rather than the federal Longshoremen's and Harbor Workers' Compensation Act does not alter our conclusion that there are no Supremacy Clause, Due Process, Full Faith and Credit or Equal Protection problems arising from the fact that Puerto Rico, as

authorized by Congress, *see* 48 U.S.C. §§ 747, 749 and 821, has provided an exclusive remedy for workers injured in Puerto Rican waters. *See Fonseca v. Prann, supra.*

### 2. Application of the PRWACA in this case

Plaintiffs argue that even if the PRWACA is constitutional, it does not automatically apply to every injury occurring in Puerto Rican waters, nor does it bar every suit that can be brought by injured employees. Because the district court did not know enough to be sure that the PRWACA should apply to this case and to these defendants, plaintiffs urge, it erred in dismissing their claims on the basis of the exclusivity provision of that statute. It is at this point that a close look at the history of the case is crucial.

### A. Choice of law issue

Plaintiffs point out that in response to defendants' motion to dismiss, they urged that the court did not have sufficient information to decide whether, under the standards of *Alcoa v. Velez,* 376 F.2d 521, 526 (1st Cir.1967), Puerto Rico law should apply. Since there were, in their view, unresolved issues of material fact, and since in the absence of affidavits submitted by the defendants to show that there were no issues of material fact, they had no duty to provide evidence of those issues, they insist that summary judgment was not appropriate.

 Plaintiffs are correct that the party requesting summary judgment has the burden of demonstrating the absence of any genuine issue of material fact. *Mack v. Cape Elizabeth School Bd.,* 553 F.2d 720, 722 (1st Cir.1977), and that even when the parties have stipulated to certain facts, it does not necessarily follow that the court has enough information to grant a motion for summary judgment if the stipulation suggests that there remain material factual questions. *See, e.g., Williams v. Chick,* 373 F.2d 330, 331–32 (8th Cir.1967). On the other hand, where the stipulated facts do

not suggest that there are unresolved material factual questions, the nonmoving party may not simply assert that such issues exist, without providing the court with evidence to support its claim. *Cf. Cleary v. Perfectune,* 700 F.2d 774 at 778 (1st Cir.1983) (in the face of affidavits demonstrating the lack of a material issue of fact, the nonmoving party may not rest on his allegations that such an issue exists); *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975). Like the affidavits of the moving parties in *Cleary* and *Hahn,* the parties' agreement to a list of relevant facts may so satisfy the court that no material factual disputes remain that, absent evidence to the contrary by the nonmoving party, summary disposition of the legal issues is appropriate. *See, e.g., Smith v. Califano,* 597 F.2d 152, 155 n. 4 (9th Cir.1979).

█ In this case, we think the district court properly imposed the burden on plaintiffs to demonstrate some evidence that the PRWACA should not apply. As noted in the district court's opinion, the plaintiffs had stipulated a number of relevant facts: that Caribe is a Louisiana corporation authorized by the Commonwealth of Puerto Rico to do business in Puerto Rico; that Louis Lusson was domiciled and residing in Puerto Rico; that Robert Bousson was domiciled in New York, but residing in Puerto Rico; that both Lusson and Bousson "were employed as seamen by Caribe Tugboat Corporation, in San Juan, Puerto Rico"; that Lusson and Bousson had been sent from San Juan to New Orleans to join the Sea Racer and had then travelled with the Sea Racer back to San Juan, where their injuries occurred; and that Caribe had insured the decedents under the PRWACA.

Based on those facts, the court was justified in concluding that the PRWACA should apply to plaintiffs' claims. The only contrary authority plaintiffs presented to the court was *Alcoa Steamship Co. v. Velez,* 376 F.2d 521 (1st Cir.1967), where we held that Puerto Rico could not include within the purview of its workers' compensation act maritime workers coming from ports outside Puerto Rico aboard vessels belonging to owners outside Puerto Rico. Contrary to plaintiffs' position, *Velez* did not hold that the PRWACA could not validly be applied unless the court first established certain key factors, such as the place where the contract of employment was entered into, the domicile of the corporate employer, the home port of the vessel and the nature of its voyage or operation. *Velez* simply made clear that injury in Puerto Rican waters is not enough to give Puerto Rico authority to impose its compensation scheme on foreign workers. In this case, the court had much more to go on than simply the location of the injury. Both decedents were residents of Puerto Rico, their employer was authorized by the Commonwealth to do business in Puerto Rico and it had voluntarily insured the decedents under the PRWACA. These factors are not necessarily conclusive. Plaintiffs might have been able to persuade the district court, had they offered any evidence, that countervailing considerations outweighed Puerto Rico's interest in applying its own statute. *See Lauritzen v. Larsen,* 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), where the Court analyzed seven factors relevant to its determination that Dutch law should govern the claim of an injured maritime employee. But not having offered any such evidence, despite the court's explicit invitation that they do so, plaintiffs may not now complain that the court did not question its own assessment that the balance of interests weighed in Puerto Rico's favor.

**B. Immunity of Shipowners**

█ Plaintiffs' appeal as to their claim against Shipowners is not so easily disposed of. Plaintiffs' claim against Shipowners was added on November 28, 1977, after both Stipulations of Fact were entered. In their motion to dismiss, on March 18, 1980, defendants cited *Ramos v. Beauregard, Inc.,* 423 F.2d 916 (1st Cir.1970) and urged that "the tug owner is not liable for conditions arising after the execution of the demise charter." Plaintiffs opposed the motion, urging that Shipowners had not met its burden of establishing the facts which give

rise to a demise in order to escape liability for unseaworthiness. *See Guzman v. Pichirilo,* 369 U.S. 698, 700, 82 S.Ct. 1095, 1096, 8 L.Ed.2d 205 (1962). At the hearing on November 21, 1980, the court noted that it heard arguments regarding the demise charter issue and the unseaworthiness of the Sea Racer and gave the parties three months for more discovery and to inform the court if an evidentiary hearing was necessary. Had the court's July 14, 1982 dismissal of the complaint against Shipowners been on the ground urged—that there was a demise charter and no unseaworthiness preexisted that demise, we would be reluctant to question its judgment. Given the presence of a set of stipulated facts, the court's express request that the parties inform it of any evidentiary disputes and plaintiffs' failure to do so, we would be inclined to say that plaintiffs are now estopped from complaining that the court was not sufficiently apprised of such a dispute. The court, however, dismissed the claim against Shipowners on the ground that "the shipowner ... is also an employer within the terms of the workmen's compensation law" and is therefore, like the immediate employer, immune from suit because of the exclusive remedy provisions of the PRWACA.

Were we satisfied that Shipowners is an employer within the terms of the PRWACA, we would affirm. On the record before us, however, we are unable to do so. The basis for the court's holding is a series of cases in which we and the Supreme Court of Puerto Rico have outlined what is known as the "statutory employer" doctrine. Under the PRWACA, an injured employee entitled to compensation under the statute has no additional remedy against his employer, *see* 11 L.P.R.A. § 21, but he may claim and recover damages against a responsible third party. *See* 11 L.P.R.A. § 32. Some confusion is injected into the scheme by the provision in section 20 of the statute that an employer is responsible for insuring not only his own immediate employees, but also the employees of "some person with whom the employer contracted for the job, or ... a contractor or independent subcontractor employed or contracted by" him unless the independent contractor himself insures those employees. 11 L.P.R.A. § 20. In *Colon Nunez v. Horn-Linie,,* 423 F.2d 952 (1st Cir.1970), we construed section 20 to mean that if the independent contractor did provide the required insurance, the prime contractor should not be considered an employer immune from suit under section 21, but instead be considered a third party amenable to suit under section 32. The Puerto Rico Supreme Court disagreed. In *Lugo Sanchez v. Puerto Rico Water Resources Authority,* 105 D.P.R. 861 (1977), it held that an employer designated the "statutory employer", who, but for the fact that his subcontractor has provided the insurance, would be responsible under section 20 for insuring certain employees, is, like the subcontractor, immune from suit, as provided by section 21. The court distinguished the "statutory employer" provided for under section 20 from a third party who can be sued: "For the purposes of art. 31 [11 L.P.R.A. § 32] of the Act, a third party liable for damages is a person unconnected with, alien, and separated from the juridical interaction that relates the statutory employer ... and the contractor ... with the State Insurance Fund in the mutual legal obligation of insuring their workmen and employees, pursuant to the provisions of the Workmen's Accident Compensation Act."

The "statutory employer" immune from suit under the PRWACA may be a shipowner. *Garcia v. Friesecke, supra,* 597 F.2d at 294–95; *Miro Martinez v. Compania Trasatlantica Espanola, S.A.,* 643 F.2d 897 (1st Cir.1981). We agree with the reasoning of the Puerto Rico District Court, however, that the fact that a shipowner may be a statutory employer does not mean that a shipowner is automatically and necessarily the statutory employer of all workers on its ships. *See DeCoelho v. Seaboard Shipping Corp.,* 535 F.Supp. 629 (D.P.R.1982). As the court in *DeCoelho* pointed out, the Supreme Court of Puerto Rico has recently clarified that "neither *Lugo Sanchez* nor its progeny extended the employer immunity to contractors that are in no way employers of the

injured workers or where no employer-employee relationship exists." *Id.* at 633. *See Diaz v. Vargas Reyes,* D.P.R., May 8, 1980. ("The determinant factor of immunity is the existence of that direct or indirect link between the workman who suffers the accident and the employer in the course of whose employment and as consequence of which the injury takes place.")

Our concern with the district court's judgment in this case is that it appears to have assumed that Shipowners was automatically, by virtue of owning the tug on which plaintiffs' decedents were injured, a statutory employer entitled to immunity under the PRWACA. As far as we can tell, the issue was never raised or briefed by the parties and the court knew little more about the relationship between Shipowners and the Caribe employees than that Shipowners owned the vessel. In addition, the ground for dismissal urged by the defendants, that Shipowners had no control over the vessel after it was chartered to Caribe would seem directly to contradict the employment relationship required by section 20. *See DeCoelho, supra,* 535 F.Supp. at 634.[3] Consequently, while plaintiffs' twenty month silence lends little sympathy to their argument that the court did not know enough to rule on defendants' motion to dismiss and while we consequently would have been inclined to uphold the court's judgment on the demise charter issue, we are unable to uphold the court's apparent judgment that Shipowners was automatically a statutory employer, when plaintiffs had no notice or opportunity to persuade the court that the necessary employment relationship was lacking. We therefore vacate that portion of the court's judgment dismissing plaintiffs' claim against Shipowners and remand for reconsideration whether Shipowners should be considered a statutory employer under 11 L.P.R.A. § 20 and therefore immune from suit, according to 11 L.P.R.A. § 21. In the alternative, the court may wish to address the defense originally urged by defendants, that Shipowners had so parted with control of the vessel prior to any unseaworthy condition that it cannot be held liable for injuries resulting from such a condition.

Because of our resolution of plaintiffs' constitutional claims, we need not address their argument that the court's dismissal of their complaint against the government defendants was error.

*Affirmed in part. Vacated in part and remanded for further consideration.*

---

3. We are thus unpersuaded by defendants' argument that a shipowner is necessarily in the same position as the owner of the work sites in *Rodriguez v. Union Carbide Grafito, Inc.,* 107 D.P.R. 848 (1978) and *Vda. de Costas v. Puerto Rico Olefins,* 107 D.P.R. 782 (1978). In those cases, the owners of the sites had not abandoned control of their plants. They had simply hired independent contractors to perform maintenance and construction work there. Thus, as principal contractors, they were obligated under 11 L.P.R.A. § 20 to ensure the employees of the "independent subcontractor *employed* or *contracted by*" them. (emphasis added)