Gregory **REESER**, Plaintiff,

v.

**CROWLEY TOWING & TRANSPORTATION CO., INC., Defendant.**

Civil No. 96–1023(SEC).

United States District Court, D. Puerto Rico.

Sept. 3, 1996.

Manolo T. Rodríguez–Bird, Jimenez, Graffam & Lausell, San Juan, PR, for defendant.

## OPINION AND ORDER

CASELLAS, District Judge.

Pending before the Court is defendant's Motion to Dismiss (**Docket # 5**). Upon careful examination of the applicable law and the parties' arguments, we hereby **GRANT** defendant's Motion to Dismiss.

Plaintiff in this case filed a complaint on January 1996, alleging jurisdiction pursuant to the General Maritime Law of the United States and Jones Act. (**Docket # 1**) The complaint states that approximately three (3) years ago, on March 18, 1993, the plaintiff, a seaman with residence in the Commonwealth of Puerto Rico, suffered an injury while within the course and scope of his employment aboard defendant's vessel, the Tug Fajardo. According to plaintiff, while the Fajardo was docked in Puerto Rican territorial waters and while Reeser was on duty aboard the ship, a wind blew the wheel house door shut on Reeser's right hand, damaging his fingers.

The plaintiff acknowledges that this alleged incident occurred within the territorial waters of the Commonwealth of Puerto Rico, and that he was covered by the Puerto Rico Workmen's Accident Compensation Act (P.R.W.A.C.A.) (Docket # 1, Plaintiff's Complaint, ¶ 3; Docket # 13, Plaintiff's Opposition to Motion to Dismiss, p. 2, hereinafter, "Plaintiff's Opposition"). Following the accident, he received medical treatment pursuant to that program.

However, plaintiff asserts negligence under the Jones Act and unseaworthiness under the General Maritime Law. He invokes the "intentional tort" exception to the immunity conferred upon employers insured under the Puerto Rico Workmen's Compensation Act. In the alternative, he also seeks this Court to adopt the position that defendant's gross negligence brought it outside of the scope of protection afforded by the Workmen's Compensation Act, citing authority outside of Puerto Rico. Finally, he challenges the constitutionality of a Puerto Rico law that deprives plaintiff of "his constitutional right to recover for injury occurring to

Harry A. Ezratty, San Juan, PR, for plaintiff.

his personal integrity in his work." (Plaintiff's Opposition, p. 4) Defendant now moves this Court to dismiss this action, citing current law which denies seamen Jones Act protection within the territorial limits of the waters of the Commonwealth of Puerto Rico. Pursuant to the discussion below, we dismiss plaintiff's complaint.

### Applicable Law/Analysis

Prior to 1917, the jurisdiction of the United States over Puerto Rican waters was the jurisdiction that the United States had over all other navigable waters. *Gromer v. Standard Dredging Company*, 224 U.S. 362, 365–366, 32 S.Ct. 499, 500–501, 56 L.Ed. 801 (1912). However, in 1917, Congress enacted the second Organic Act of Puerto Rico, also known as the Jones Act.[1] Section 1 provided that "the provisions of this act shall apply to the island of Porto Rico and to the adjacent islands belonging to the United States, and waters of those islands ..."

In Section 8 of the Jones Act it was expressly provided that:

*The harbor areas and navigable streams and bodies of water* and submerged land underlying the same in and around the Island of Porto Rico and the adjacent islands and waters now owned by the United States for public purposes be, and the same are hereby, *placed under the control of the Government of Porto Rico*, to be administered in the same manner and subject to the same limitations as the property enumerated in the preceding section: PROVIDED, that all laws of the United States for the protection and improvement of the navigable waters of the United States and the preservation of the interests of navigation and commerce, *except in so far as the same may be locally inapplicable*, shall apply to said Island and waters and to its adjacent islands and waters ... (Emphasis added).

Thus by virtue of the enactment of the Organic Act of 1917, Congress transferred to the Government of Puerto Rico certain public property including the navigable territorial waters; placed them under the control of the Government of Puerto Rico, and granted the insular legislature the power to legislate in this area, power only modified by Sections 9 and 37, in that its authority extended to all matters of legislative character not locally inapplicable.[2]

An important event in the political and legal development of the Island took place in 1952 when Puerto Rico attained Commonwealth status.[3] Under the new status, a compact was established between the Government of the United States and the people of Puerto Rico by virtue of which the latter adopted its own Constitution.[4] As part of the compact, the people of Puerto Rico ac-

---

**1.** 39 Stat. 951, Act of March 2, 1917; Historical Documents, Vol. 1, L.P.R.A., p. 52.

**2.** Section 9: "That the statutory laws of the United States not locally inapplicable, except as hereinbefore or hereinafter otherwise provided, shall have the same force and effect in Puerto Rico as in the United States ..." 39 Stat. 954. Section 37: "That the legislative authority herein provided shall extend to all matters of a legislative character not locally inapplicable ..." 39 Stat. 964.2. *See* Casellas, *Federal and Commonwealth Jurisdiction in the Field of Maritime Law*, 26 Rev.Col.Ab.P.R. 259 (1966); Casellas, *The Admiralty Jurisdiction in Puerto Rico*, 22 Rev.Col. Abog.P.R., 165, 179–192; Gustavo A. Gelpí, Jr. *Maritime Law in Puerto Rico: An Anomaly in a Sea of Federal Uniformity*, 26 Rev.Jur.U.I. 251 (1992).

**3.** *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 671, 94 S.Ct. 2080, 2085, 40 L.Ed.2d 452 (1974): "By 1950, however, pressures for greater autonomy led to congressional enactment of Pub.L. 600, 64 Stat. 319, which offered the people of Puerto Rico a compact whereby they might establish a government under their own constitution. Puerto Rico accepted the compact, and on July 3, 1952, Congress approved, with minor amendments, a constitution adopted by the Puerto Rican populace."

**4.** *See Córdova & Simonpietri v. Chase Manhattan Bank*, 649 F2d. 36, 39, 41 (1st Cir.1981): "The FRA [Federal Relations Act] and the Puerto Rico Constitution were intended to work a significant change in the relation between Puerto Rico and the rest of the United States ... In sum, Puerto Rico's status change from that of a mere territory to the unique status of Commonwealth. And the federal government's relations with Puerto Rico changed from being bounded merely by the territorial clause, and the rights of the people of Puerto Rico as United States citizens, to being bounded by the United States and Puerto Rico Constitutions, Public Law 600, the Puerto Rican Federal Relations Act and the rights of the people of Puerto Rico as United States citizens."

cepted and approved Public Law 600.[5] Sections, 1, 8, 9, and 37, which we have already mentioned, of the Organic Act of 1917, were literally reenacted in the Puerto Rican Federal Relations Act and became an integral part of the compact.[6]

■ Thus, by Sections 8 and 37 of the Puerto Rico Federal Relations Act, Congress conferred control to the Commonwealth of Puerto Rico over its local, navigable waters. Said power included the ability to enact inconsistent legislation with the Jones Act and the General Maritime law of the United States. Accordingly, the rules of the admiralty and maritime law of the United States apply to Puerto Rico's navigable waters, but only to the extent that they are not locally inapplicable, because they were not designed to apply to Puerto Rico waters, or because they have been rendered inapplicable by reason of being inconsistent with Puerto Rican legislation. *Guerrido v. Alcoa Steamship Co.*, 234 F.2d 349, 355 (1st Cir.1956).

■ In the Commonwealth of Puerto Rico, unlike anywhere else in the United States, when a seaman, who is a resident of Puerto Rico, is injured within the territorial waters of Puerto Rico while working for a company insured under the Puerto Rico State Insurance Compensation Fund, his exclusive remedy lies pursuant to the P.R.W.A.C.A., Apr. 18, 1935, No. 45 p. 250, §§ 1–42, Title 11, Laws of Puerto Rico Annotated.[7] In particular, Section 21 of the law reads, in pertinent part:

> When an employer insures his workmen or employee in accordance with this chapter, the right herein established to obtain compensation shall be the only remedy against the employer, even in those cases where maximum compensations and benefits have

been granted in accordance thereof; but in case of accident to, or disease or death of, the workmen or employees not entitled to compensation under this chapter, the liability of the employer is, and shall continue to be, the same as if this chapter did not exist.

The Commonwealth of Puerto Rico has exercised the power delegated by Congress and has enacted legislation inconsistent with the Jones Act and the General Maritime Law of the United States insofar as the P.R.W.A.C.A. grants absolute employer immunity for accidents of seamen occurring within the territorial navigable waters of Puerto Rico. *See Lastra v. New York & Porto Rico SS Co.*, 2 F.2d 812 (1st Cir.1924). The exclusiveness of this remedy also applies to longshoremen and harbor workers. *Fonseca v. Prann*, 282 F.2d 153 (1st Cir. 1960); *Alcoa Steamship Company v. Perez Rodriguez*, 376 F.2d 35, 38 (1st Cir.1967), *cert. denied*, 389 U.S. 905, 88 S.Ct. 215, 19 L.Ed.2d 219 (1967); *Garcia v. Friesecke*, 597 F.2d 284, 293 (1st Cir.1979), *cert. denied*, 444 U.S. 940, 100 S.Ct. 292, 62 L.Ed.2d 306 (1979).

Defendant argues, and this Court agrees, that the wisdom, or lack of wisdom, of Congress' decision to confer plenary power to the Commonwealth of Puerto Rico over its local, navigable waters, is not a matter of judicial review, but rather of Congress itself. The Court noted in *Fonseca*, 282 F.2d at 157:

> ... [I]f Congress sees fit it may supplant the local legislation as it applies to local navigable waters by making the Jones Act and the General Maritime Law of unseaworthiness specifically applicable in Puerto Rican waters, but it is not our function to do so.

**5.** 64 Stat. 314 (1950); 48 U.S.C.A. § 731 (1952).

**6.** *See United States v. Quiñones*, 758 F.2d. 40, 42 (1st Cir.1985); "Thus, in 1952, Puerto Rico ceased being a territory of the United States subject to the plenary powers of Congress as provided in the Federal Constitution. The authority exercised by the federal government emanated thereafter from the compact itself. Under the compact between the people of Puerto Rico and the United States, Congress cannot amend the Puerto Rico Constitution unilaterally, and the

government of Puerto Rico is no longer a federal government agency exercising delegated power." *But see United States v. Sanchez*, 992 F.2d 1143 (11th Cir.1993).

**7.** *Examining Board of Engineers, Architects and Surveyors v. Flores*, 426 U.S. 572, 596, 96 S.Ct. 2264, 2278, 49 L.Ed.2d 65 (1976): "We readily concede that Puerto Rico occupies a relationship to the United States that has no parallel in our history ..."; *see also Harris v. Rosario*, 446 U.S. 651, 100 S.Ct. 1929, 64 L.Ed.2d 587 (1980).

Therefore, the employer's immunity within the territorial navigable waters of Puerto Rico has existed since 1924, as initially held in *Lastra v. New York & Porto Rico S.S. Co.,* 2 F.2d 812. Such immunity has been consistently ratified by the Court of Appeals for the First Circuit, and accordingly remains undisturbed to date. *Guerrido v. Alcoa S.S. Co.,* 234 F.2d 349 (1st Cir.1956); *Fonseca v. Prann,* 282 F.2d 153; *Manuel Caceres v. San Juan Barge Co.,* 520 F.2d 305 (1st Cir.1975); *Garcia v. Friesecke,* 597 F.2d 284; *Lusson v. Carter,* 704 F.2d 646 (1st Cir.1983); *Perez De La Cruz v. Crowley Towing & Transportation Co.,* 807 F.2d 1084 (1st Cir.1986), *cert. denied,* 481 U.S. 1050, 107 S.Ct. 2182, 95 L.Ed.2d 838 (1987).

In *Perez de la Cruz,* 807 F.2d at 1087, the Circuit Court expressly acknowledged the employer immunity doctrine under the P.R.W.A.C.A.:

> ... [There is] an unbroken line of cases dating back to 1924 in which this Court has held that Congress, in [48 U.S.C.] § 749 and its predecessors gave Puerto Rico the power to supplant federal maritime law in favor of the P.R.W.A.C.A. for covered accidents involving seamen that occur in Puerto Rico.... In *Lusson* we held that ... the P.R.W.A.C.A. displaces the Jones Act as the exclusive remedy for covered seaman injured by insured employers in Puerto Rican waters. *Lusson,* 704 F.2d at 649.

**The Employer Immunity Doctrine pursuant to the P.R.W.A.C.A. Precludes Plaintiff's Claim Under 46 App.U.S.C. § 688.**

■ The case law discussed above outlines the several factors the Court must examine to determine the applicability of the employer's immunity, pursuant to the P.R.W.A.C.A., to wit:

1) whether the employer is authorized by the Commonwealth to do business in Puerto Rico;

2) whether the employer insured its employees under the P.R.W.A.C.A.;

3) whether the accident occurred within the territorial waters of Puerto Rico; and

4) whether the seaman was a resident of Puerto Rico at the time of the accident.

*See generally, Lusson,* 704 F.2d at 650; *Perez de la Cruz,* 807 F.2d at 1085–1086.

■ It is undisputed in the present case that the defendant Crowley Towing & Transportation Company was a corporation duly authorized to do business, and in fact was doing business in Puerto Rico. (Plaintiff's Complaint, ¶ 3, Plaintiff's Opposition, p. 2) Plaintiff has also admitted that the defendant is an insured company under the P.R.W.A.C.A. (Plaintiff's Complaint, ¶ 3) With regards to the factor involving the location of the accident, San Juan harbor is clearly within the territorial waters of Puerto Rico. The term "territorial waters of Puerto Rico" encompasses:

> The harbor areas and navigable streams and bodies of waters and submerged land underlying the same in and around the island of Puerto Rico ...

48 U.S.C. § 749. *See also Perez de la Cruz,* 807 F.2d 1084; *Lusson v. Carter* (case involved an accident within San Juan Harbor)

Finally, the residence factor, as delineated in the *Lusson* case, emphasizes the residence of the injured plaintiff, regardless of that plaintiff's domicile. In the present case, plaintiff also admits that he resided in Puerto Rico. (Docket # 1, Plaintiff's Complaint ¶ 1) Upon careful review of all these factors, the Court finds that the employer immunity applies to plaintiff's claim in the present case. Accordingly, and pursuant to the employer immunity doctrine noted above, we must dismiss plaintiff's claim.

**Plaintiff is Bound by Precedent**

Plaintiff does not challenge the existence of an exclusive remedy under the set of facts of this case. Rather, plaintiff seeks this Court to re-visit the constitutional challenge of this doctrine. (Docket # 13, Plaintiff's Opposition, pp. 4–7) We decline to do so. In *Lusson v. Carter,* 704 F.2d 646, 649, the First Circuit Court of Appeals addressed plaintiff's constitutional challenge and noted that there were no Supremacy Clause, Due Process, Full Faith and Credit or Equal Protection problems with Puerto Rico's exclusive remedy under the P.R.W.A.C.A.

Plaintiff also exhorts the Court to ignore and/or overrule the above cited cases that have recognized and affirmed the doctrine of employer immunity. Plaintiff's contention is clearly against the doctrine of "stare decisis", which "... renders the ruling of law in a case binding in future cases before the same Court or other Courts owing obedience to the decision." *Gately v. Commonwealth of Massachussetts*, 2 F.3d 1221, 1226 (1st Cir.1993). *See also Ramos v. Beauregard, Inc.*, 423 F.2d 916 (1st Cir.1970), *cert. denied* 400 U.S. 865, 91 S.Ct. 101, 27 L.Ed.2d 104 (1970) (movant must present compelling reasons which outweigh the public interest in the stability of a legal doctrine to be able to overcome the principle of "stare decisis"); *United States v. Maine*, 420 U.S. 515, 95 S.Ct. 1155, 43 L.Ed.2d 363 (1975) ("the doctrine of stare decisis is still a powerful force in our jurisprudence ...").

Defendant argues, and this Court agrees, that adherence to the doctrine of "stare decisis" is of fundamental importance, since it promotes stability and respect for judicial authority. *Hilton v. South Carolina Public Railways Com'n*, 502 U.S. 197, 199–200, 112 S.Ct. 560, 563–564, 116 L.Ed.2d 560 (1991). Furthermore, the doctrine has special force in the area of statutory interpretation, where Congress remains free to alter such interpretations. *Id.* at 200, 112 S.Ct. at 564. In the present case, Congress has refused to overrule the line of cases that recognize Puerto Rico's power to supplant federal maritime law in favor of the P.R.W.A.C.A.. Congress has not seen fit to do this, and accordingly, we must heed and apply the doctrine of employer immunity in the present case.

 Plaintiff also invokes the "intentional tort" exception to the employer immunity doctrine, citing a recent decision of the Puerto Rico Supreme Court, *Laureano Perez v. Soto y Otros*, 96 J.T.S. 88, page 1265. Briefly stated, the law recognizes an exception to the doctrine of employer immunity when the injury is produced as a result of intentional acts on the part of the employer. Although this Court acknowledges the existence of this exception, the facts of the present case do not reveal any intentional wrongdoing on the part of defendants. Even granting all reasonable inferences in favor of the non-moving plaintiff, *Casas Office Machines, Inc. v. Mita Copystar America, Inc.*, 42 F.3d 668, 684 (1st Cir.1994),[8] that defendant failed to repair the defective door despite plaintiff's warnings, the Court concludes that such actions do not rise to the level of intentional acts required to qualify within the "intentional tort" exception to the employer immunity doctrine.

Plaintiff also exhorts this Court to adopt a "gross negligence" exception to the employer immunity doctrine. The Supreme Court of Puerto Rico has not yet directly addressed this issue, although it reserved its judgment via dictum in *Rivera Santana v. Superior Packaging, Inc.*, 92 J.T.S. 165, n. 24 (1992). We will not venture to interpret the Puerto Rico law on an issue in which the Puerto Rico Supreme Court has not yet issued a definitive opinion, and which would generate serious public ramifications. This Court simply cannot presume to instruct the Puerto Rico Supreme Court about how to interpret its own laws. *See Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967) ("the State's highest court is the best authority on its own law.")[9]

Pursuant to the above discussion, the Court finds that the Puerto Rico Workmen's Compensation Act is the exclusive remedy for plaintiff in the present case. Accordingly, plaintiff's claim pursuant to 46 App.U.S.C. § 688 and general maritime law must be **DISMISSED**. Judgment shall follow accordingly.

**SO ORDERED.**

---

8. Since defendant has relied on documents outside the pleadings on its motion to dismiss, defendant's motion to dismiss shall be treated as a motion for summary judgment, pursuant to Fed. R.Civ.P. 12(b)(6). and 56(c).

9. Even assuming *arguendo* that the Puerto Rico Supreme Court created a "gross negligence" exception to the employer immunity doctrine, we do not find from the facts of this case enough evidence to infer that the employer engaged in gross negligence.